# Commonwealth *v.* Shinfield, Appellant.

*Criminal law—Unlawful possession of intoxicating liquors—Evidence—Sufficiency.*

In the trial of an indictment for unlawful possession of intoxicating liquors, the case is for the jury and a verdict of guilty will be sustained, where the evidence on the part of the Commonwealth established that the defendant was the lessee of a two-story brick dwelling, in which extensive apparatus for the manufacture of liquors were found, and the defense advanced was that the premises had been sublet to a third party over whom the defendant had no control.

*Practice, Q. S.—Trial—Charge of court.*

A party may not sit silent and take his chance of a verdict and then, if it is adverse, complain of a matter which, if an error, would have been immediately rectified and made harmless.

If the trial judge has inadvertently erred in commenting on testimony not properly in the case, it is the duty of counsel to call his attention to it in order that he may make any necessary correction.

Argued April 14, 1924. Appeal, No. 84, Oct. T., 1924, by defendant, from judgment of Q. S. Phila. Co., Sept. T., 1923, No. 780, on verdict of guilty in the case of Commonwealth of Pennsylvania v. Joseph B. Shinfield. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Indictment for unlawful possession of intoxicating liquor. Before FINLETTER, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed.

*Error assigned* was, among others, the charge of the court.

*Chester N. Farr, Jr.,* for appellant.

*Lemuel B. Schofield,* Assistant District Attorney, and with him *Samuel P. Rotan,* District Attorney, for appellee.

Opinion by Henderson, J., July 2, 1924:

The defendant was convicted of the unlawful possession of intoxicating liquors. The assignments of error all relate to the charge of the court and are presented under a general exception to the charge. They complain of (a) certain "important misstatements of fact"; (b) the inadequacy of the charge. The argument of the learned counsel for the appellant involves a consideration of the facts as exhibited in the testimony. The defendant was the lessee of a two-story brick building, No. 633 Dickinson Street in the City of Philadelphia which had been occupied for some years by him as a place for the manufacture of metal cornice and spouting. The shop, at the time of the defendant's arrest, was in the second story of the building where the defendant also had his office. Entrance to the second story was obtained by a door and stairway at the southwest corner of the building. There was also a double door permitting the entrance of vehicles from the street to the lower floor. On the latter floor adjoining the west wall of the building was an inside room about twelve feet wide and twenty-eight feet long with a wide door at the end opening toward the front of the building. Back of the building was an enclosed shed about twelve feet wide. A door or gate led from this shed to an over-arched passage way between two buildings to a back street. The police department received a complaint by letter with respect to this building, whereupon six police officers proceeded with a search warrant to examine the premises about half past six o'clock on June 20, 1923. As they approached the front of the building on Dickinson Street, three of the officers proceeded to the rear of

the building and three remained at the street. As the officers entered the building through the large front door, a man appeared at one of the front windows upstairs. They proceeded to the rear of the building and into the shed referred to where they found a high pressure steam boiler in operation. Near the boiler was a door leading from the shed into the inner room and in the latter place there was found a still composed of two copper containers each of which had a capacity of about 200 gallons. These were connected to the boiler and also to a condenser from which liquor was flowing into five 5-gallon jugs from as many outlets. There was found also a large quantity of raw whiskey or alcohol estimated at about 2,000 gallons. Six empty alcohol barrels; 12 empty 5-gallon bottles; a quantity of funnels, cartons, corks, empty 5-gallon cans, and 195 5-gallon cans of alcohol, were found there, and on the outside of the inside room were barrels containing liquor. A quantity of soft coal used for fuel in the boiler was in the shed. No one was seen on the premises by the officers except the man on the second floor and he had disappeared when the premises were entered. The case against the defendant rested on the fact that he was the lessee of the building, that the distillery had been found in operation, and that a large quantity of whiskey had been found therein as above stated. The fact of the distillation of the liquor in the manner described by the Commonwealth's witnesses was not controverted. The defense was that the appellant had sublet the rear part of the first floor of the building to a man named Martin Jacobs, on the 7th of June, 1923, and a lease was offered in evidence between the defendant and Jacobs. The lease was for the term of one month and purported to be the demise of a dwelling, but the real estate clerk who drew the lease explained that she inserted that description without direction from either the lessor or lessee, and that she alone was responsible for that mistake. The defendant testified that Jacobs leased the premises for a garage

and repair shop, and his understanding was that it was
to be so used. There was a general denial by the defend-
ant that he had anything to do with the distilling of the
liquor, or that he knew that any such business was con-
ducted in the building. He testified that he was away
from his shop much of the time; that the only use he
made of the lower story was a place for keeping his auto-
mobile, which he did under an arrangement with the
sub-tenant. The Commonwealth's evidence showed that
some of his material, sheet metal, etc., was on that floor
and near the empty barrels. The foreman of the defend-
ant's shop testified that he worked upstairs from 8
o'clock in the morning to 4:30 in the afternoon; that he
never noticed any odor or smell or indication of any
cooking or brewing on the first floor; and that all the use
that was made of the first floor by the defendant was the
keeping of a truck there. The foreman had occasion to
go into the lower floor for material used in making the
cornices, but never saw any barrels there. The book-
keeper. of the defendant also stated that he never no-
ticed any odor on the premises nor saw black smoke
arising from the boiler. In the 1st, 2d, 3d, 4th, 5th, 7th
and 8th assignments of error our attention is directed to
the alleged misstatements of fact. These all relate to the
description of the premises given by the court in the
charge to the jury. There was evidence relating to a
trapdoor opening from the first to the second floor.
When referring to the inner room the court said that
according to one of the Commonwealth's witnesses there
is access through a trapdoor up into the second story.
It is alleged by the appellant that this was a mistake,
and that there was no trapdoor leading from the inner
room to the second floor, but that the trapdoor opened
from the outer room into the second floor. It is not ap-
parent how the defendant was prejudicially affected by
this mistake, if it were a mistake. There was certainly
evidence given with reference to the trapdoor and it is
not disputed that there was an outer trapdoor as shown

in the photographs which were used in the argument on the appeal, but were not offered at the trial. The court, as we read the charge, was giving in some detail a description of the premises as disclosed by the Commonwealth's evidence, and was not intimating any fact affecting the defendant. He was giving a general description of the premises in order that the jury might direct their attention to the conditions out of which the prosecution arose. Moreover, if there were a mistake in regard to this subject (and this applies also to the other alleged misstatements of fact) it was the duty of the counsel engaged in the trial to bring the subject of the error to the attention of the court, if it were a matter of importance. It is further objected that the court used the term "blind room" with reference to the room within the first floor apartment; the contention being that the room had a large door at the south end opening toward the street, but not on the street, and a window at the rear opening into the shed, but we think it cannot be successfully alleged that the description was inaccurate; it was not an outside room, it had neither door nor window opening on the outside of the building, and the court described it as a "blind room with no visible access front or back. I mean unseen from the front of the building and out of sight to anybody in the back of the building." That fairly describes the condition of the inside room. In referring to this room the court said that access to it was gained by "ordinary doors." The appellant contends that these words were used by the court with the intention of controverting the defendant's statement that he had leased it to his sub-tenant for a garage repair shop, but we do not put such a construction on the charge. The court doubtless had reference to the testimony of the officer who said that he obtained access to the enclosed room through a door from the shed where the boiler was and that was a process of "doubling on your tracks" for in coming from the boiler room into the enclosed room he was going southward towards the front

of the building.   This enclosed room was dark and it was when an electric light was turned on that the wide door opening out of the enclosed room into the large room was seen by the officer.   It was not contended by the Commonwealth nor understood by the court that this was the only way of getting into the enclosed room.   It clearly appears from the testimony of the officers, and must have been so understood by the jury, that at the south end of the large room there was a wide door.   Reference was also made in the charge to the "tunnel alley way."   It appeared from the testimony of officer Quinn that at the rear there was an alley extending eastwardly and out to another alley and that alley extended under two adjoining houses.   It was called a blind alley by the officer presumably because the houses were built over the passage way.   It was developed in the evidence that it was not a passage way under the surface, but in view of the testimony, it was not an unwarranted description to follow the testimony of the officer and call it a blind alley.   Stress is laid on that part of the charge which relates to the adaptability of the place for the kind of work which was carried on, and to the use of the word "preparations" as indicating a construction of the premises with a view to a violation of law.   The particular clause in the charge referred to is in these words "and evidently somebody was carrying on this illegal business, evidently somebody had made these preparations for escape from arrest; evidently somebody had made these preparations for secrecy and lack of observation from the street......"   Taken in connection with the context the court's thought was that the opportunities the condition of the premises afforded were taken advantage of to carry on the business there engaged in.   The person or persons responsible for the operation of the distillery prepared himself or themselves from observation and from liability to arrest by the use of the convenient and well-equipped location.   There was no attempt on the part of the Commonwealth to show that the prem-

ises had been constructed and the surrounding conditions created for the purpose of operating a distillery. It was not an unwarranted inference of the court however that in selecting this location and erecting the machinery, the person or persons interested had in view the opportunity for escape and protection from observation from the street to which the court refers. With respect to all of these criticisms of the charge it is to be noted that they relate not to the defendant, but to the conditions found on the premises, and we are unable to regard them as important. The outstanding fact in the case was that on premises apparently in the possession of the defendant, an extensive business of distilling intoxicating liquor had been carried on for some time. The material inquiry was therefore whether the place where this business was conducted was in the control of the defendant or that of the man to whom the defendant alleged he had leased part of the building. There is a general criticism of the charge that it had a "prejudicial tone" and in part a "sinister implication" in connection with which attention is called to the comment of the court on the argument of the counsel for the defendant that the failure of the Commonwealth to call any witnesses living in the neighborhood to prove that the stills were operated, showed a weakness in the case. We have read the charge with care in the light of the contention of the appellant that it is not an impartial presentation of the case to the jury, but we are unable to reach that conclusion. With respect to the alleged misstatements of fact we do not regard them of such importance as to affect the case if they may be held to be mistakes and if they were important, the attention of the judge should have been called to the error before the jury retired. A party may not sit silent and take his chance of a verdict and then if it is adverse, complain of a matter which if in error would have been immediately rectified and made harmless: Medis v. Bentley, 216 Pa. 324. It should be noted too that the argument of the

learned counsel on the appeal (who did not conduct the trial in the court below) is based to a considerable extent on the plan and photographs of the building used at the argument; and if there should appear to be a discrepancy in the description of the premises between the charge of the court and the disclosure of the photographs that fact would not be sufficient to support a reversal of the judgment, particularly when it is not made to appear that the defendant was especially prejudiced. Many cases hold that the court has a right to express an opinion as to the evidence, providing nothing is said to bind the jury or preclude them from deciding the case for themselves on the evidence: Simmons v. Penna. R. R., 199 Pa. 232; Com. v. Van Horne, 188 Pa. 143; Com. v. Schoen, 25 Pa. Superior Ct. 211; Com. v. Penrose, 27 Pa. Superior Ct. 101, and cases there cited. In the circumstances of the case under consideration the court very properly brought to the attention of the jury some of the inferences which might lawfully be drawn from the relation of the defendant to the premises, and the conditions existing there when the officers made the search. We find nothing in the charge which took from the jury the disposal of the case according to the evidence. In the introduction to the charge the judge said: "You will start by presuming that he (the defendant) is innocent, and you will carry that presumption through to the end of the case, until it is removed by proof, beyond a reasonable doubt, that satisfies you of the defendant's guilt." When speaking of the defendant's evidence that he had no knowledge of what was being done in the rear part of the lower floor of the building, the court said: "He says all of that went on and he in total ignorance. If that is so, he is to be acquitted. If you are even in doubt about that matter, reasonably, from the testimony he is to be acquitted." When commenting on the lease to Jacobs, the court said: "If this thing was operated by Jacobs, the defendant is not guilty, even if he knew about it," and at the conclusion of the charge the follow-

ing instruction was given: "The sum total of it all is this. If Jacobs was operating this thing alone, the defendant is not to be found guilty simply because he did not report him to the police. But if Jacobs and the defendant were operating the thing together, or if this man was operating the thing alone and using Jacobs as a shield, then he should be convicted. I think I have gone over all the facts and all the inferences that could be drawn from them. I leave the whole matter to you. I sum it all up thus: you are to presume him to be innocent to start out with. You are to carry that presumption through and give him the benefit of it until that presumption is removed by evidence beyond a reasonable doubt. When it is removed by evidence, or inferences from evidence, beyond a reasonable doubt, you are to find him guilty. If not, you are to find him not guilty."

The exception to so much of the charge as relates to character is not sustained. What was said on that subject was not error, and no request was made for further direction to the jury with respect thereto. It will be observed too, that no one of the three persons called as character witnesses qualified himself on the subject. Neither of them testified that he was acquainted with the people in the neighborhood in which the defendant lived, or in which he prosecuted his business. Neither of them stated that he was acquainted with the general reputation of the defendant as a law abiding person in the community in which he lived or in which he did business. The testimony therefore was not of the quality which brought the subject of character into consideration. As was said by Judge Gibson in Kimmel v. Kimmel, 3 S. & R. 337, the reputation of the neighborhood is the only thing that is competent and if the witness has acquired a knowledge, if it be a report of the neighborhood, he is qualified to be heard. The subject is discussed in Com. v. Howe, 35 Pa. Superior Ct. 554, where authorities in support of the rule stated are cited. If the charge of the court seemed to bear against the defendant, it was

because the facts bore against him.   The conditions existing on the premises of which he was admittedly the lessee, put him on the defensive and the exigency of his situation was to convince the jury that he was in no way responsible for the unlawful business there carried on. This he undertook to do by evidence that he was not in control or possession of the premises where the still was operated.   His testimony was corroborated to the extent of the lease introduced and that of two witnesses who had been about the premises who said that they discovered no evidence on the second floor that a distilling operation was carried on at the rear of the first floor. If the defendant failed to satisfy the jury of the truth of his defense, it was not because of any error of the court for which the judgment should be reversed.   We are not convinced that the result is in any degree attributable to errors in the charge of the trial judge.

The assignments are overruled, the judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.