Commonwealth *v.* State Loan Corporation.

Argued October 22, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, PARKER and JAMES, JJ.

*E. J. Mullen,* with him *Thomas Raeburn White* and *R. S. Hemingway,* for appellant.

*H. Montgomery Smith,* and with him *Harold G. Teel,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., February 1, 1935:

The indictment in this case charges the defendant with violating the Small Loan Act, approved June 17,

1915, P. L. 1012, as amended by the act approved June 4, 1919, P. L. 375*. There were four counts in the indictment. The third count charges the defendant with charging, and the fourth count with attempting to collect from, A. L. Anderson, guarantor on a note executed by Rachael and Delmar H. Robbins, in the sum of $150, compound and usurious interest.

On October 2, 1928, the defendant corporation loaned Rachael and Delmar Robbins, the sum of $150 on their judgment exemption note, payable one day after date, with interest at the rate of 3½ per cent per month, under an agreement that the loan should be repaid in twenty equal, consecutive, monthly installments of $7.50 each. On the back of the note was written:

"Dated, Bloomsburg, Pa., Oct. 2nd, '28.

"For value received, I guarantee the payment of the within note to the State Loan Corporation, Bloomsburg, Pa., or bearer, and I hereby confess judgment for the same, with all the rights and remedies to collect from me, without first proceeding against the maker or makers of the within note, as the holder thereof would have against the maker or makers thereof, waiving the stay, exemption and inquisition

---

*Section 2 of the amending act (7 PS §755) provides, in part, as follows:

"Any person, persons, copartnership, association or corporation who shall obtain a license in accordance with the provisions of section one of this act, shall be entitled to loan money in sums of three hundred ($300) dollars or less, either with or without security, to individuals pressed by lack of funds to meet immediate necessities, at his, their, or its place of business, for which said license is issued, and to charge the borrowers thereof, for its use or loan, interest at a rate not to exceed three and one-half (3½) per centum per month. No fees, fines, or other charges, either in addition to or as a part of the above specified interest, shall be charged or collected under any pretext whatsoever.

"Interest shall not be payable in advance or compounded, and shall be computed only on unpaid balances for the time that has elapsed at date of payment," etc.

laws of any State, now in force or hereafter to be passed, and waiving presentment and protest.

"Witness my hand and seal.

"A. L. Anderson (Seal)."

On December 17, 1928, the defendant corporation loaned the Robbins a further sum of $30, with interest at the rate of 3½ per cent per month. The makers of the notes failed to make their monthly payments of principal and interest, as provided therein, and on April 10, 1930, they executed and delivered a third note to the defendant corporation, in the sum of $200, with the same rate of interest as in the previous notes. The $200 represented $134.36, the balance of principal due on the $150 note and interest thereon of $35.27; $22.60, the balance of principal due on the $30 note and interest thereon of $2.07; and a premium of $7.50 on a fire insurance policy covering the household goods, which was not issued until April 29, 1930, leaving a cash balance of 18 cents, alleged to have been paid to the borrowers but which Mrs. Robbins denied she received. When these several loans were made, pass books were given to Robbins and his wife, and at the time the last note of $200 was executed, the loans of $150 and $30 were marked "paid off" on the pass books, as well as on the records of the company.

On November 6, 1931, the makers of the notes having defaulted in their payments, the defendant corporation caused judgment to be entered in the Court of Common Pleas of Columbia County against A. L. Anderson. On the same day, an execution was issued to collect the sum of $150, with interest at 3½ per cent per month from October 2, 1928. Thereupon, Anderson petitioned the court to open the judgment. A rule was granted to show cause, and all proceedings were stayed pending the disposition thereof. Before a further order was made on this rule, the defendant, on December 7, 1931, issued an alias fi. fa. setting forth

a balance due of $136.95, with 3½ per cent interest from September 7, 1931, costs and a 10 per cent attorney's commission. Under the alias writ, the sheriff, on January 8, 1932, levied on a car and a truck found in Anderson's possession. An information was lodged before a justice of the peace and an indictment was found by the grand jury. Motion to quash the indictment was denied. Trial was had, and the defendant was convicted on the third and fourth counts of the indictment. The lower court overruled motions in arrest of judgment and for a new trial. Sentence was pronounced, and this appeal was taken.

The appellant argued the first, third, sixth and seventh assignments together. We shall so discuss them.

The first position taken by the appellant is that the court erred in not quashing the indictment, as Section 2 of the amending Act of 1919, supra, provides that the borrower may recover in a civil action from the lender any illegal interest charged, and imposes a penalty of $50 to be paid to the borrower. Section 6 of the Act of 1915, supra (7 PS §759), provides that every person, corporation, etc., "who shall violate any provision of this act, or shall direct or consent to such violation," shall be guilty of a misdemeanor. The act itself, taken as a whole, clearly indicates that it was intended to impose on a violator of its provisions more than a mere financial liability. The imposition of a fine and imprisonment under a criminal prosecution, notwithstanding a penalty may be recovered in a civil proceeding, is not unprecedented in our legislative history. The Oleomargarine Act of 1899 (May 5th, P. L. 241) did that very thing. In Com. v. Diefenbacher, 14 Pa. Superior Ct. 264, 265, the provisions of that act were under consideration. It was held that a penalty recoverable in a civil action was not a bar to the imposition of a fine and a sentence to im-

prisonment in a criminal prosecution as they are parts of but one punishment. President Judge RICE there said: "It has been said that it is not the policy of the law to multiply penalties, and as a general proposition this is true. Nevertheless many statutes have been enacted by our legislature which provide that a person violating their provisions shall be liable to a penalty to be recovered in a civil action as debts of like amount are recoverable and shall also be guilty of a misdemeanor, and upon conviction be fined and imprisoned. We know of no Pennsylvania decision in which it has been held that such legislation offends against any provision of our Constitution." In Com. v. Puder, 67 Pa. Superior Ct. 11, 19, which was affirmed by the Supreme Court in 261 Pa. 129, 104 A. 505, a prosecution was instituted under the Small Loan Act. We there said: "The word 'penalty' [used in the title of the act] comprehends both civil and criminal punishment."

The appellant further claims that there was no proof of an attempt to charge or collect compound interest. We have heretofore stated that when the first two notes were consolidated in the third note, interest in the sums of $35.27 and $2.07 was added to the principal, as well as $7.50 for insurance, apparently not then due. The appellant alleged that Anderson not only guaranteed the payment of the $150 note, but also executed another contract, wherein he agreed that the $150 note was given "as security for the payment of any loan or loans, now or hereafter made to Rachael Robbins-Delmar Robbins by holder thereof, and for any writings given in extension or renewal thereof." Evidently, the appellant was trying to collect from Anderson the balance due on the principal of the two notes, together with deferred interest thereon and interest on the entire indebtedness, including the accumulated interest and commissions.

It is too plain for argument that this must be regarded as a charge of, and an attempt to collect, compound interest and additional charges by appellant. The appellant's failure to receive the money did not relieve it of the offense charged. The Act of March 31, 1860, P. L. 427, §50 (18 PS §3691), provides that a defendant may be convicted for an attempt to commit a misdemeanor. While it may be conceded that the compounding of interest is sometimes permissible, interest upon interest or compound interest is allowed only in special cases, as where there is a settlement of accounts between the parties after interest has become due: Moll v. Lafferty, 302 Pa. 354, 153 A. 557. This is not so where, as here, a large rate of interest is originally charged, as provided for in the statute, and there is a specific provision that no additional charges, etc., shall be made. That is an express warning to money lenders that interest can not be compounded. It would be against public policy thus to impose additional interest upon those who must by force of necessity pay high rates to provide for their immediate needs. An act of assembly of this character should receive an interpretation favorable to the borrower, and its provisions should not be permitted to be waived by any alleged agreement of an embarrassed debtor.

The Michigan case of Rouse v. Jennings et al., 249 N. W. 10, cited by defendant, fails to support its contention. There, interest was not compounded by adding the principal and interest into one new obligation and charging interest at the rate of 3½ per cent per month, as here. True, the second loan included indebtedness for interest on the original loan, plus an additional loan of $60, making a total of $185; but the new note bore interest at the rate of only 7 per cent, the legal rate then allowed in Michigan.

The fourth and fifth assignments raise the questions

of the admissibility of testimony of a witness called by the Commonwealth for the purpose of showing that at the time judgment was entered against Anderson and the writ of execution was issued, the amount of the debt and interest sought to be collected from Anderson was in excess of any indebtedness due by Robbins and his wife; and of the admissibility of the records of the judgment entered against Anderson and the writs of fi. fa. for the purpose of showing that the defendant charged and attempted to collect fees and interest on the loan in violation of the act. We find no error in the admission of this testimony or of the records.

Nor do we find any merit in the eighth assignment of error that the court did not clearly instruct the jury that they could find the defendant not guilty on the third and fourth counts. A reference to the charge reveals that the court expressly told the jury that if they believed that the defendant did not charge or attempt to collect compound or usurious interest from Anderson, they ought not to convict the defendant on either of those counts. It was unnecessary to emphasize that language by repetition in the latter part of the charge.

The ninth assignment is directed to the alleged failure of the court to instruct the jury as to the meaning of usurious interest. The court very fully gave instructions as to what constituted compound interest. Usurious interest means nothing more or less than illegal interest. Here it is synonymous with compound interest. If appellant desired additional instructions as to the meaning of that term, it was its duty to request the court to that effect. Remaining silent and taking its chances on the verdict, the defendant can not now, after an adverse verdict, complain of that alleged error: Com. v. Shinfield, 83 Pa. Superior Ct. 292.

The last assignment of error complains of the

court's action in overruling motion of defendant to have a juror withdrawn and the case continued because of an objectionable remark made by counsel for the Commonwealth. After the closing argument, the court took a recess, and when it reconvened, complaint was made that the Commonwealth's attorney, in the course of his argument to the jury, used the term "loan shark." The attorney acting for the Commonwealth at once withdrew the remark and stated that he only meant to apply it to the general business of making small loans to people in necessitous circumstances. The court immediately instructed the jury to disregard these remarks. It is not unusual to refer to those engaged in loaning money in sums of $300 as "loan sharks," and this statute is sometimes called the "loan shark law." In Com. v. Puder, supra (261 Pa. 129, 136, 104 A. 505), the present Chief Justice stated: "The attempt in recent years to eradicate the evils of the so-called 'money loan sharks' by proceedings instituted in Philadelphia and Pittsburgh is a matter of general public knowledge." We think that the alleged harmful remarks were not so objectionable as to warrant us in disturbing the conviction of this defendant corporation. It was a matter largely within the discretion of the learned court below whether the defendant was harmed so that a juror should have been withdrawn: Com. v. Greason, 204 Pa. 64, 53 A. 539; Com. v. Touri, 295 Pa. 50, 144 A. 761; Com. v. Meyers, 290 Pa. 573, 139 A. 374; Com. v. Wilcox, 112 Pa. Superior Ct. 240, 170 A. 455.

Judgment of sentence of the lower court is affirmed.