H. E. VAUGHN, ASSIGNEE OF TRI-CITY DISCOUNT CORPORATION, A CORPORATION, APPELLANT, v. GILBERT R. GRAHAM AND BERTHA A. GRAHAM, RESPONDENTS.—121 S. W. (2d) 222.

St. Louis Court of Appeals.   Opinion filed November 8, 1938.

*Albert S. Ennis* for defendants.

*W. R. Carver* for (plaintiff) appellant.

McCULLEN, J.—This is a suit to recover principal and interest due on a promissory note secured by a chattel mortgage on personal property. It was instituted in the Circuit Court of Jefferson County, Missouri, on November 10, 1936, but, on change of venue, was sent to the Circuit Court of Ste. Genevieve County, where it was tried before the court and a jury, resulting in a verdict and judgment in favor of respondents, who will be referred to as defendants, and against appellant, who will be referred to as plaintiff. Plaintiff has duly appealed to this court.

The amended petition of plaintiff, on which the case was tried, alleged that H. E. Vaughn was assignee for the sole purpose of collecting and making distribution of the assets of the Tri-City Discount Corporation, a corporation, referred to hereinafter as the loan company, by virtue of an assignment made by that corporation on August 20, 1935; that the promissory note sued on was executed and delivered to the loan company by defendants on August 18, 1932, whereby defendants promised to pay to the loan company, for value received, the sum of $300 in monthly installments of $10, beginning on September 18, 1932, together with interest on the principal sum at the rate of $2\frac{1}{2}$ per cent per month, and a like amount on the 18th day of each succeeding month thereafter until the full amount of said note, with interest at said rate on all unpaid balances thereof, was paid.

The amended petition further alleged that, on the same date, defendants, for the purpose of securing said promissory note, executed and delivered to the loan company a chattel mortgage covering certain personal household property, which was described in the mortgage; that the loan company was licensed to make such loans under and by virtue of the "Small Loan Laws" of the State of Missouri; that, on November 7, 1936, there was a balance past due and unpaid on the principal of said note in the amount of $292.25; and that interest on said note in the amount of $299.25 was unpaid, a total past due and unpaid on said note in the amount of $591.50; that payment of said note had been demanded by both the assignor and the assignee, but defendants had refused to pay.

The answer of defendants, after a plea in abatement had been stricken out by the court on motion of plaintiff, consisted of a general denial and allegations to the effect that the note sued on was void because it was drawn for the unpaid balance together with accumulated interest on former notes, which constituted the collection or charging of compound interest in violation of the Missouri Small Loan Laws; that the note was void because usurious interest had been received, charged, or exacted in violation of said Small Loan Laws. The cause was tried without any reply having been filed by plaintiff.

Plaintiff contends that the trial court erred in refusing to give to the jury a peremptory instruction offered by plaintiff directing a verdict for plaintiff at the close of all the evidence in the case. In support of his contention, plaintiff argues that there was no conflict in the evidence as to the amount past due and unpaid on the note which is the basis of this action; and that his peremptory instruction should have been given because there was no question of fact to be determined by the jury. A review of the evidence shows that this contention of plaintiff is not well founded.

Plaintiff identified and introduced in evidence a number of exhibits showing the right of the loan company to operate under the Missouri Small Loan Laws. Those laws were enacted in 1927 with certain amendments and additions in 1929 and are now Sections 5544 to and including 5564, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., secs. 5544-5564, inclusive, pages 7704-7711, inclusive). Plaintiff also testified concerning the execution and delivery by defendants of the promissory note and chattel mortgage on which the suit is based, which were introduced in evidence as plaintiff's Exhibits A and B. Plaintiff's evidence further showed that the loan company issued its check in the amount of $300, made payable to the order of defendants, on the same date as that of the promissory note and chattel mortgage. The check was introduced in evidence as plaintiff's Exhibit S, and shows on its back the indorsements of both defendants. The check was drawn on the Citizens Bank of Festus, Missouri, and bears on its face a stamp of that bank showing payment thereof by said bank.

It is undisputed that, prior to the execution of the note and chattel mortgage which constitute the basis of this action, there had been executed by defendants three notes to the loan company, one being a note for $280, dated May 8, 1930; another being a note for $300, dated November 5, 1930; and the third being a note for $300, dated January 30, 1932. Each of said prior notes was secured by a chattel mortgage executed by defendants on the same household property described in the chattel mortgage involved in this suit. The evidence shows that each of the said three notes as well as the chattel mortgages securing them had been cancelled, each bearing the cancel stamp of the Recorder of Deeds of Jefferson County, Missouri, where-

in plaintiff and defendants reside. Plaintiff gave further testimony showing the amount due on the note sued on as the amount stated in his petition. He also gave testimony, and introduced evidence showing the dissolution of the Tri-City Discount Corporation and the assignment by the corporation to plaintiff of the note in question for collection.

On cross-examination, being asked concerning the records kept by the loan company of all previous transactions between it and defendants, plaintiff testified that he had no record of any of the previous notes, or of payments made upon them by defendants, either on the principal or interest; that he had no record of the amounts due at the time of the respective renewals of said prior notes; that he did not have any copies of reports made on said loans to the Finance Commissioner because he had destroyed all records of such previous transactions upon the advice of counsel that the law only required such records to be kept for two years; and that he had destroyed said records in 1935 before this suit was filed. Plaintiff testified that he did not remember whether or not defendants owed anything on any prior note at the time the note sued on was executed, but later on, in his cross-examination, stated "they owed something." In this connection plaintiff testified that defendants paid the balance on the prior note in cash before the note sued on was executed, but he did not remember how much the balance on the former note was. After plaintiff had testified that defendants "owed something" on a prior note at the time of the execution of the note sued on, he testified further, on cross-examination, as follows:

"Q. If they owed something, how did you happen to issue a check for the full amount of that loan? A. They paid the other note.

"Q. How? A. In cash.

"Q. How much? A. I don't remember.

"Q. Mr. Vaughn, I am going to ask you again if you mean to tell the Court and jury that Mr. Graham and his wife, or either of them, paid you what was owing to the Tri-City Discount Corporation in cash at the time you issued this check for $300? A. The best I remember.

.  .  .  .  .  .  .

"Q. Isn't it a fact that at that time you figured up that Mr. Graham and his wife owed you $308 and some cents? A. I don't remember anything like that.

"Q. Would you know your figures if you would see them? A. Yes, sir.

"Q. I show you here defendant's Exhibit B. Refreshing your memory by looking at defendant's Exhibit B, I will ask you to state whether or not you will say that Mr. Graham and his wife paid you $308.10 in cash and then you gave them $300 on this loan? A. I don't remember the amount.

"Q. Refresh your memory from that card. A. According to this, it was $276.

"Q. Doesn't that card show a payment of $308.10? A. That is interest and all.

"Q. Yes. Do you mean to tell the Court and jury that they gave you $308.10 in cash and you gave them a check for $300 and they executed a note for $300? A. I don't remember."

Defendants' Exhibit B, referred to in the foregoing cross-examination of plaintiff is a document entitled "Statement of your loan," issued by the loan company showing, in plaintiff's own handwriting, the following dates and figures:

| "Amount of Loan | Date of Loan |
|---|---|
| "$300.00 | 1/30/32" |

Said exhibit then states that the loan is payable in twenty equal consecutive monthly installments of $15 each, together with interest at the rate of 2½ per cent per month; that the nature of the security is a chattel mortgage, following which appears information to the borrower concerning payments; then follows a schedule showing the amounts of monthly payments on the $300 loan. The exhibit concludes with the following:

"Payments Made.

| "Date | Amount of Payment | For Interest | For Principal | Rec'd by |
|---|---|---|---|---|
| "2/29/32 | 22.50 | 7.50 | 15.00 | H.E.V. |
| "3/29/32 | 16.00 | 7.13 | 8.87 | H.E.V. |
| "8/18/32 | 308.10 | 31.97 | 276.13 | H.E.V. |
| | | | 300.00" | |

Defendant Gilbert R. Graham testified that, on May 8, 1930, he and his wife, defendant Bertha A. Graham, borrowed $280 from the Tri-City Discount Corporation and executed therefor a note to said loan company, dated that date, for said sum; that he made only one payment on that loan—$14 on principal and $7 on interest, the total payment being $21; that, on November 3, 1930, he and his wife owed $266 on the principal and $35 interest, making a total of $301 then owing on the note of May 8, 1930; that plaintiff so figured the amount at that time; that, at the request of the loan company, he and his wife executed a renewal note dated November 3, 1930, which was drawn by plaintiff for $300, plaintiff stating at that time that he could only make the loan for $300. Defendants having no money at that time, the $1 in excess of $300 was not paid. The testimony of defendant Graham shows that further payments were made by him on both the principal and interest on the last-mentioned note, but that later on defendants fell behind again in their payments and the loan company, through plaintiff, required defendants to execute another renewal note, which was dated January 30, 1932; that a part of the

principal and the interest on the last-mentioned note were paid by defendants, but that, on August 18, 1932, plaintiff, acting for the loan company, requested another renewal note from defendants; that there was at that time due on the principal of the last preceding note executed by defendants the sum of $276.13 and unpaid interest in the sum of $31.97, making a total of $308.10; that another renewal note was drawn by plaintiff in the sum of $300, the $8.10 being dropped because defendants at that time were unable to pay. The last-mentioned note is the note dated August 18, 1932, upon which plaintiff's suit is based.

Mr. Graham further testified that, at the time the last-mentioned loan was made, plaintiff gave him the check for $300 (plaintiff's Exhibit S) to take to his home for the purpose of having his wife indorse it, she being ill at that time; that he and his wife indorsed the check and he returned it to plaintiff because plaintiff told him it was for the records. With respect to the check (plaintiff's Exhibit S), Mr. Graham testified as follows:

"Q. What became of it after you signed it? A. I gave it back to Mr. Vaughn.

"Q. I will ask you if you ever cashed that check or if your wife ever cashed it? A. Positively not.

"Q. Did you get any money at all on that check or for the note executed at that time? A. I never got no money at all.

"Q. Did you ever take that check to the Citizens Bank? A. I never. I gave it to Mr. Vaughn.

"Q. Did you ever see it after the time you gave it to him until yesterday? A. I never seen it no more."

Defendant Gilbert Graham further testified that, at the time he executed the note and sued on, plaintiff gave him no money whatsoever; that the only money he ever borrowed at any time from the loan company was the $280 represented by defendants' Exhibit C, the note dated May 8, 1930; that, when he and his wife executed the various notes, plaintiff gave him a card, but, when each new note was made, the card was taken back by plaintiff; that he happened to retain defendants' Exhibit B showing the statement of the loan of January 30, 1932, because at that time his wife was sick and he took the card with him and just kept it in his possession; that plaintiff never asked him for it. Being asked how much in all he had paid to the loan company on the original loan of $280, defendant said: "I paid him better than $200"; and in this connection testified further as follows:

"Q. On the principal? A. Yes, sir.

"Q. Do you know how much you paid on the interest? A. I paid more on interest than I did on the principal.

THE COURT (Q.): "How much have you paid in all? A. I paid him about $486, all told, the best I can remember."

Defendant testified further that interest payments, including payment made in 1936, would amount to about $280; that the last $300 note executed by him and his wife was actually for about $80, representing principal still unpaid on the original loan, and $220 interest that had been carried from one note to another.

Charles Porter, cashier of the Citizens Bank of Festus, was called as a witness for plaintiff and testified that the note dated January 30, 1932, defendants' Exhibit D, was not in the possession of the bank; and that the bank never did own any of the assets of the Tri-City Discount Corporation. Later, upon having his memory refreshed, the witness testified:

"As I remember it—I had forgotten it until I heard you mention it—as I remember it, we took the notes over of that corporation for collection for a while. We had them in the bank a few months, but never owned them, but I believe we had them over there for collection."

With respect to plaintiff's Exhibit S, the check for $300, dated August 18, 1932, issued by the loan company through plaintiff in connection with the note sued on, Mr. Porter testified that he did not cash the check and did not see it cashed. On cross-examination, the witness, after stating that Maxine Drake was teller of window No. 2 at the bank and was still employed there, testified:

"Q. You don't know who cashed it? A. No. It was cashed at the window of teller No. 2.

. . . . . .

"Q. Maxine Drake is still there? A. Yes.

"Q. You didn't ask her whether she cashed it? A. No.

"Q. You know nothing in the world about it, except what it shows on its face? A. That is all."

Maxine Drake, the teller in charge of window No. 2 of the bank, was not called to testify.

Concerning the check for $300, dated August 18, 1932 (plaintiff's Exhibit S), plaintiff, having been called in rebuttal, finally testified on cross-examination as follows:

"Q. I want to ask you if it isn't a fact that you gave the check to Mr. Graham and asked him to take it home and have his wife to sign it, because she was sick and not able to come to your office, and if it isn't a fact that he did take it home and had his wife sign it and he signed it in your office and left it in your office? A. I don't remember about him taking it home.

"Q. He did leave it in your office after he signed it? A. I don't remember whether he did or not.

"Q. You wouldn't say he ever took it out of your office? A. I am not saying he did or didn't."

Section 5556, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., section 5556, p. 7708), of the "Small Loan Laws" provides that every licensee thereunder may loan money not exceeding in amount the sum of $300, and then proceeds:

"and may charge, contract for and receive thereon interest at a rate not to exceed two and one-half per centum per month. Interest shall not be payable in advance or compounded and shall be computed on unpaid balances. . . . No interest or charge in excess of those permitted by this article shall be made, contracted for or received and if any such is charged, made contracted for or received, the contract of loan and all evidence thereof and security and lien therefor shall be void and of no effect, and the licensee shall have no right to collect or receive any principal interest, or charge whatsoever of or for such loan."

The final part of section 5561, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., section 5561, p. 7710) provides:

"No loan for which a greater rate of interest or charge than is allowed by this article has been contracted for or received, wherever made, shall be enforced in this State, and every person in anywise participating therein in this State shall be subject to the provisions of this article."

Defendants' Exhibit A introduced in evidence is a statement entitled "Minimum Requirements for Licensees under Small Loan Law, State of Missouri, Department of Finance, S. L. Cantley, Commissioner." This is a document setting forth a number of rules adopted by the Department of Finance of Missouri, approved February 18, 1932, by the then Attorney General of Missouri. Among the provisions thereof is No. 5 (c) as follows:

"Interest shall not be compounded; that is added to the principal and interest charged on the total balance. When a loan is renewed, if the interest is to be collected from the customer on the old loan, this interest must be collected before paying out the proceeds of the new loan."

We think it is clear from the law and the evidence that the court committed no error in refusing to direct a verdict for plaintiff. It was a case for the jury to decide.

The general rules as to interest are stated in 33 C. J., p. 179, as follows:

"Section 2 (B). Simple interest is interest computed soley upon the principal.

"Section 3 (C). Coumpound interest is interest upon interest; where accrued interest is added to the principal sum and the whole treated as a new principal for the calculation of the interest for the next period."

The carrying of accrued interest over as a part of the new principal results in compound interest. [Pullis v. Somerville, 218 Mo. 624, 117 S. W. 736.]

In the case at bar there was undoubtedly sufficient evidence on behalf of defendants to warrant the conclusion that in each of the renewal notes executed by defendants there was included unpaid interest

on a preceding note, thus resulting in the charging of compound interest. There was evidence to warrant the conclusion that the note sued on was not given in payment and discharge of the preceding note, making an entirely new contract, but that it was a renewal note. It has been held that a renewal note is a continuation of the original indebtedness. [Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673.] The evidence of defendants, if believed, was sufficient to show that unlawful interest was included in the amount of the note sued on; and that, if the contract had been performed according to its terms, it would have given to plaintiff a greater profit than that allowed by law, thus bringing it clearly within the provisions of the statutes above set forth and rendering it "void and of no effect."

In 1 Daniels on Negotiable Instruments (6 Ed.), Article 205, p. 301, the general rule is stated:

"If the consideration of the original bill or note be illegal, a renewal of it will be open to the same objection and defense."

The same rule should, of course, be applied to a renewal of a bill or note subsequent to the original.

In Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673, it was held that the giving of a renewal note, in which is included usurious interest charged as a part of the principal, does not purge the transaction of usury if usury was exacted and received at the inception thereof; and that it could not be purged by any number of renewals so long as the original usury charged was carried forward into the renewals as part of the principal thereof. The acceptance of a renewal note, in order to constitute payment of a preceeding note "must be taken expressly as payment by the agreement of the parties." [Lynes v. Holt-Taylor Merc. Co. (Mo. App.), 268 S. W. 702, 705.] There was no evidence introduced to show that the note sued on in this case was, by the expressed "agreement of the parties," taken as payment of the preceding note. It is obvious that the court would not have been justified in declaring as a matter of law that the note sued on was taken as payment and discharge of the preceding note, and that plaintiff was entitled to recover.

Plaintiff contends that the court erred in giving defendants' instructions Nos. 3 and 4, and asserts that neither of said instructions correctly stated the law governing the cause.

Defendants' Instruction No. 3 told the jury that the Tri-City Discount Corporation, operating under the special law, was not permitted to charge compound interest, that is, interest on interest; and that, if the jury found and believed from the evidence that the note sued on and introduced in evidence included both principal "(money actually loaned) and also included interest due on a prior loan; and that said note was renewal note including balance of principal on former note and interest, if you so find, and that said note required defendants to pay interest both on the principal and on the

added interest, if you find interest was added, then plaintiff, the assignee of said corporation, cannot recover in this suit and your verdict should be for the defendants.''

It appears to us that the instruction is clearly based upon the statutes heretofore set forth, and required the jury to find every necessary prerequisite under the law to a verdict for defendants. The instruction was within the pleadings and there was substantial evidence to support the court's action in giving it. We are, therefore, of the opinion that no error was committed by the court in this respect.

In defendants' instruction No. 4 the court told the jury that, if they found and believed from the evidence that the Tri-City Discount Corporation charged, made, contracted for or received from defendants any interest in excess of 2½ per cent per month on the amount of principal (or money actually loaned) they should find the issues for defendants and against the plaintiff. We think this instruction also correctly declared the law in accordance with the statutes referred to, under which the loan company was operating. Those statutes, as shown by the plain and unambiguous language used by the Legislature, were clearly intended to prevent loan companies, operating thereunder, from charging in excess of two and one-half per cent per month as interest on the amount of money loaned by them to borrowers. Furthermore, it is too plain for debate that the Legislature intended, by the enactment of said laws, to effectuate that purpose by providing that, where interest or charges in excess of those permitted by the Small Loan Laws

''Shall be made, contracted for or received, . . . the contract of loan and all evidence thereof and security and lien therefor shall be void and of no effect, and the licensee shall have no right to collect or receive any principal, interest or charge whatsoever of or for such loan.'' [R. S. Mo. 1929, section 5556 (Mo. Stat. Ann., sec. 5556, p. 7708).]

Both instructions complained of were within the pleadings; they correctly declared the law under the statutes mentioned; they were based upon substantial evidence; and also had the added virtues of shortness and simplicity. We think the court did not err in giving said instructions.

Being of the opinion that the record is free from reversible error, and that the judgment was clearly for the right parties, it becomes our duty to affirm the judgment, and it is so ordered. *Hostetter, P. J.,* and *Becker, J.,* concur.