## MADISON PERSONAL LOAN, Inc., v. PARKER.

### No. 109.

Circuit Court of Appeals, Second Circuit.

Dec. 8, 1941.

144

David I. Silverman, of New York City (Philip Zierler, of Brooklyn, N. Y., on the brief), for petitioner-appellant.

Henry W. Parker, of New York City (William Stephen Brown, of New York City, on the brief), for trustee-respondent.

Jackson R. Collins and Linn K. Twinem, both of New York City, amicus curiæ.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal by permission from an order of the District Court construing the Small Loan Act of New York, Banking Law, § 340 et seq. Appellant, Madison Personal Loan, Inc., petitioned for an order requiring the bankrupt to turn over an automobile which was covered by a chattel mortgage in favor of appellant. The bankrupt's trustee opposed the petition on the ground that the loan which the mortgage secured was void under the Small Loan Act. The referee granted the petition, but on petition to review, the District Judge reversed and upheld the trustee. In re Radner, D.C., 36 F.Supp. 964.[1]

The facts are stipulated. On June 23, 1939, the bankrupt executed a promissory note in the amount of $287, bearing interest at the maximum rate allowed under the Small Loan Act and secured by the chattel mortgage in question on the bankrupt's automobile. Of this $287, $159.29 was paid

to appellant in satisfaction of a prior loan, representing $158.19 principal and $1.10 interest, and the remaining $127.71 was paid over to the bankrupt. There has been some dispute whether it is proper to infer from these facts that the $287 loan was a "renewal" or a "new" loan. In our view of the case the particular term to be applied to the transaction is immaterial. Default on the note and mortgage occurred on July 23, 1940.

The trustee relies on § 352 of the New York Banking Law in asserting that the loan by appellant is void. The section reads in part:

"No interest, consideration or charge for the use of money shall be deducted or received in advance or compounded, and all interest, consideration and charges for the use of money shall be computed on unpaid principal balances. * * *

"If any interest, consideration or charges in excess of those permitted by this act are charged, contracted for, or received the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever."

These provisions of this particular section, first enacted in its present form in 1932, have not been construed by any New York court.[2] In other states, however, substantially similar provisions, all based on the uniform act drafted through the offices of the Russell Sage Foundation, have been construed as the District Court did the New York act. Frazier v. City Investment Co., 42 Ga.App. 585, 157 S.E. 102; Lanier v. Consolidated Loan & Finance Co., 47 Ga. App. 148, 170 S.E. 99, followed with approval in Nash Loan Co. v. Dixon, 181 Ga. 297, 182 S.E. 23; Commonwealth v. State Loan Corp., 116 Pa.Super. 365, 176 A. 516; Vaughn v. Graham, 234 Mo.App. 781, 121 S.W.2d 222. The only case to the contrary, Rouse v. Jennings, 263 Mich. 609, 249 N.W. 10, will be discussed more fully below.

[1] The decision below is noted with approval in 27 Va.L.Rev. 952 and 4 U. of Detroit L.J. 225, and adversely in 10 Fordham L.Rev. 311. A general survey of the subject will be found in the symposium, "Combating the Loan Shark," in 8 Law & Contemp. Prob. 1-206; and compare, also, May, Small Loans, 14 Encyc. Soc. Sciences 105.

[2] Cases involving other provisions of the section have assiduously supported the protection of borrowers against extra charges, such as for insurance. Pollack v. Madison Long Island Personal Loan Co., 176 Misc. 78, 24 N.Y.S.2d 950; Krulik v. Confidential Personal Loan Co., 176 Misc. 138, 26 N.Y.S.2d 676; McGoldrick v. Family Finance Corp., 174 Misc. 971, 22 N.Y.S.2d 186, affirmed, 262 App.Div. 720, 28 N.Y.S.2d 709; Stuback v. Sussman, Sup., 8 N.Y.S.2d 141, affirmed, 256 App.Div. 903, 10 N.Y.S.2d 240, 281 N.Y. 719, 23 N.E.2d 544; Cucco v. Pacific Finance Corp., 259 App.Div. 1033, 20 N.Y.S.2d 779.

Appellant presses upon us the New York cases on compounding interest decided prior to the Small Loan Act. These cases clearly hold that an agreement to pay interest on accrued interest is legal if the agreement is made after accrual and with consideration, but illegal if made in advance of accrual. Newburger-Morris Co. v. Talcott, 219 N.Y. 505, 114 N.E. 846, 3 A.L.R. 287; Young v. Hill, 67 N.Y. 162, 23 Am. Rep. 99; Stewart v. Petree, 55 N.Y. 621, 14 Am.Rep. 352. This distinction, appellant says, is written into the Small Loan Act through the word "compounded" in the excerpt from § 352 quoted above. This hardly seems the case. In the first place, both the Talcott and Young cases, supra, set out not to define compound interest, but to determine when compounding interest is legal. For example, in the Talcott case, supra, 219 N.Y. at page 510, 114 N.E. at page 847, 3 A.L.R. 287, the court said: "There are times, however, when a promise to pay compound interest will be enforced, if made after simple interest has accrued." And in the Young case, supra, 67 N.Y. at page 167, 23 Am.Rep. 99, the court was even more specific: "The exacting or reserving of compound interest has not met with favor in the courts, but the right to retain it when voluntarily paid is not disputed, and a recovery of it upon express contract, made after the interest has accrued and upon a sufficient consideration, is allowed."

The problem of construing § 352 is thus changed from the question whether the legislature enacted "compounded" as defined by the New York courts to the question whether the legislature intended by "compounded," "illegally compounded." Stated this way, it seems highly questionable that appellant's argument is at all sound. Since the act itself denounces compounding as illegal, it seems gratuitous to assume that the legislature meant to make illegal only illegal compounding of interest. True, the illegality of compounding in New York was not usurious, but only contrary to public policy, Stewart v. Petree, supra; and thus the penalty was refusal to allow recovery of the additional interest, Young v. Hill, supra, not avoidance of the entire obligation under the general usury statute. New York General Business Law, § 373; Sabine v. Paine, 223 N.Y. 401, 119 N.E. 849, 5 A.L.R. 1444. But to rely on this is to make all the more finely spun the distinction thus attributed to the legislature.

Furthermore, the legislature enacted the law in its present form in 1932 approximately as the fifth draft of the Uniform Small Loan Law. Hubachek, Annotations on Small Loan Laws, 1938, 222. If the legislature had any specific intent with reference to "compounded," it probably meant to use the word in a manner more or less common to all states, for it was enacting a uniform law. Certainly the drafters of the Uniform Small Loan Law could hardly have meant any more than that "compounding" simply means interest on interest. See 33 C.J. 179; 30 Am.Jur. 6. Otherwise, they invited confusion. "There is a wilderness of authority on this subject. Decisions may be found taking almost any view of the question." Palm v. Fancher, 93 Miss. 785, 790, 48 So. 818, 33 L.R.A., N.S., 295. If any sense is to be given to "compounded" in the Uniform Small Loan Law, it must be to take it as a commonly accepted term, not with a complicated gloss for each state's peculiar rules of legal and illegal compounding of interest.

Support to this view is lent by the further provision of § 352 of the New York Banking Law that interest "shall be computed on unpaid principal balances." If we construe "compounded" to mean illegally compounded under the Young and Talcott cases, supra, we run counter to this requirement that interest shall be computed only on principal. Even if the word "compounded" were omitted from the statute, the addition of interest to principal in forming new principal would be denounced by the remaining part of the section. This is made stronger by noting that the first and fourth drafts said that interest should be computed only on "unpaid balances," whereas the fifth draft, the source of the New York act, and the current sixth draft say "unpaid principal balances." The changes in the section on interest, we are told, were designed to make "more clear the prohibition of additional charges beyond the authorized interest." Gallert, Hilborn and May, Small Loan Legislation, 1932, 97.[3] Considering the source of the New York statute, it is

[3] The first, fourth, and sixth drafts are reprinted in Hubachek, Annotations on Small Loan Laws, 1938, Appendices A-C; the fifth draft is in Gallert, Hilborn and May, Small Loan Legislation, 1932. Appendix. In this connection it may be noted that all the courts which have ruled against compounding were construing statutes which had the somewhat less definite "unpaid balances."

only fair to assume that the legislature intended to do just what the act says—prohibit any interest beyond that specifically provided for.

This fits in with the major purpose of small loan acts and the general history of this type of remedial legislation. It was long recognized that the constriction of usury statutes encouraged loan sharks who preyed on poor and illiterate citizens in need of small sums of cash. The charges made by these unscrupulous agencies were fantastically high, and recognized as a source of untold misery among people with a precarious economic status. The drive to remedy this proceeded on the assumption that honest capital could engage in the small loan business only if guaranteed a fair return. This, it was found, amounted to from 2 to 3½ per cent a month interest. Accordingly, considerable effort was expended, principally by the Russell Sage Foundation and bona fide small loan companies, to induce legislatures to legalize small loan businesses under strict supervision. In this way, an economic need—short-term financing for people not in possession of standard credit ratings—could be met, yet unscrupulous preying on unsuspecting people eliminated. If this legislation is to succeed, all devices by which additional charges can be made must be scotched. The entire problem of small loans can be better solved by frontal attacks than by flanking infiltration. If 3 or 3½ per cent is too small to guarantee a fair return, adjustments can be made directly. Otherwise, small enhancements of return may be abused and the value of the privilege of a high return lost through loan sharks coming to the fore, dressed in respectable clothes.

■ It is admitted, however, that appellant here is a bona fide small loan company; and we do not mean to imply that it in any way intentionally seeks to flout the New York statute. It is equally obvious that this case is not one of abuse; the interest added to principal is only $1.10 out of a total of $158.19. But the fact remains that if this transaction is legal, others less bona fide will also be legal. Interest at 3 per cent a month soon becomes substantial, and constant renewal of the loans would increase the principal until the interest on the original principal would reach the proportions formerly found when only loan sharks operated. Loopholes in statutes are best closed by complete closing. Halfway measures are dangerous. Since the Russell Sage Foundation and others interested in the legislation appear to have recognized these loopholes and by constant revision sought to close them completely, it ill befits a court to reopen them by attenuated reasoning based on cases decided under entirely different circumstances. This is particularly true where, as here, it is difficult to imagine any way to alter the wording of § 352 of the New York Banking Law in order to make clearer the point that interest on interest is not to be charged.

We fall back, therefore, on the cases originally cited above which support our view. Appellant stresses the fact, however, that all these cases are from intermediate appellate courts, whereas the only final word is contrary to our view. Rouse v. Jennings, supra. In any event, for the reasons discussed above, we might decline to accept this case. But apart from this, there are two important distinctions in the Michigan case. For one thing, the court observed that a Michigan statute passed in 1869 specifically allowed interest on interest from the due date, provided it was not in excess of the legal rate and was supported by an express agreement. This statute, the court implied, remained in force along with the Small Loan Act. Furthermore, in the Michigan loan the original interest was 3½ per cent, but the interest on interest was only 7 per cent per annum. Clearly this is subject to less abuse than the allowance of 3 per cent per month on 3 per cent per month. In any event, such an anomalous situation of superficially conflicting statutes does not exist in New York. At best it is a conflict between a common-law rule and a remedial statute.

■ Appellant also seeks to distinguish between a renewal of a loan with interest added and a new loan, part of the proceeds of which are used to pay off the old loan and accrued interest. To recognize this distinction would be to leave another loophole. For a loan company could then avoid penalty by paying over to the borrower some nominal sum, say 10¢, and adding it to the principal. It is also urged that the old loan had to be cancelled before a new one could be made. New York Banking Law, § 352, forbidding a licensed loan company from permitting a borrower "to be indebted to [it] under more than one contract of loan at the same time." But it is surely reasoning in reverse to say that,

therefore, when fresh money is added, the old loan is automatically cancelled. This prohibition, if read quite literally, may perhaps mean that a loan company will simply have to forego an increased loan to a current borrower. Perhaps, however, it does not go so far as to forbid a loan company from making a new loan and either leaving the interest on the old loan an outstanding debt not bearing interest or allowing the borrower to discharge the interest out of his own pocket. Questions as to this provision are not before us; we indicate the possibilities involved merely to point out that it must be dealt with on its own merits. Certainly we should not construe the compounding clause loosely in order to enable a loan company to avoid a difficulty in the interpretation of another provision. And by indicating these possibilities, we are, of course, not suggesting their use; a loan company is undoubtedly best advised to move cautiously along these lines and to exercise the utmost good faith. Otherwise it may well be suspected of making only a strategic retreat while it perfects a new device to avoid the force of the statute.

Affirmed.