LONDON REALTY CO. v. RIORDAN.

(Supreme Court, Appellate Division, First Department. February 2, 1912.)

1. USURY (§ 53*)—ATTORNEY FEE—"DEVICE OR PRETENSE."
    Within the meaning of Banking Law (Consol. Laws 1909, c. 2) art. 10, § 314, which provides· that no person or corporation, other than those incorporated under article 10, by any device or pretense of charging for his services or otherwise, shall directly or indirectly charge or receive interest in excess of the legal rate upon a loan where household goods are taken as security, a transaction, wherein the borrower paid $10 for the lender's regular attorney as a pretended fee, according to the lender's custom of making loans, and gave as security a. mortgage upon her household furniture for $65, covering the amount received by her and the fee paid, was a device or pretense of charging for services or otherwise.
    [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 114–118; Dec. Dig. § 53.*
    For other definitions, see Words and Phrases, vol. 3, pp. 2045, 2046.]

2. COURTS (§ 189*)—MUNICIPAL COURT—PLEADING.
    Where, in an action in the Municipal Court to foreclose a chattel mortgage, usury was set up in an oral answer and in a motion to dismiss, and complainant's witness was asked on the trial whether they were incorporated under article 10 of the banking law, the defendant was not required to specifically plead that she relied upon Banking Law (Consol. Laws 1909, c. 2) art. 10, § 314, which prohibits the charging of interest in excess of the legal rate ·by persons or corporations, other than those organized pursuant to article 10.
    [Ed. Note.—For other cases, see Courts, Dec. Dig. § 189.*]

Appeal from Appellate Term.

Action by the London Realty Company against Elizabeth Riordan. From a judgment of the Appellate Term affirming judgment for plaintiff in Municipal Court, defendant appeals. Reversed, and complaint ordered dismissed.

See, also, 131 N. Y. Supp. 1126.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Leonard McGee (Huber B. Lewis, of counsel), for appellant.

Morrison & Schiff (Edward W. S. Johnston, of counsel), for respondent.

CLARKE, J. This is an action to foreclose a chattel mortgage on household furniture and effects given to secure a loan of $65. The case was brought in the Ninth District Municipal Court, Borough of Manhattan, on oral pleadings; the defendant pleading general denial, usury, and payment. Judgment was rendered in favor of the plaintiff for $26.78, and a "special form judgment" was entered which awarded possession of the property to the plaintiff. On appeal the Appellate Term affirmed this judgment.

This was the second transaction between the parties; defendant having formerly borrowed upon the same security $50, which was repaid. The chattel mortgage was expressed to be for $65, which was to be repaid in 16 weekly payments of $4.13 a week; the first being due on May 5, 1910, and the last on August 18, 1910. In addition to the mortgage, she signed the application for the loan. The defendant claimed that this application was the one she put in on the former occasion when she borrowed $50, and that the sum of $65 which now appears in it was written in without her knowledge or consent. She also at plaintiff's request signed the following paper:

"Law office of Morrison & Schiff. New York April 28th. 1910. I hereby retain Messrs. Morrison & Schiff to search the records for incumbrances, and liens against my property, real or personal, situated at 1229 Webster Ave. in the borough of Manhattan, city of New York, and for judgments against the owners thereof, to draw the necessary papers in connection with the proposed loan to be made to me by the London Realty Company and also cause to be made an inventory and appraisal of my said property; and for such legal services and disbursements I hereby agree to pay to said Morrison & Schiff the sum of ten 00/100 dollars at the time of the closing of the loan between the undersigned and the London Realty Company."

Mr. Blauner, the secretary and manager of the plaintiff, testified:

"She asked for a loan of $65. I asked her if she had the same chattels in 1907. She said she has and some more. I asked her what time we can send down the appraiser. She says any time. I asked her further if she had any other loan since the time she had from us. She said no. I told her we would have to give this over to our attorney to make a search to find out if there is no mortgage against the chattels at that time. She said 'Of course, there is not, but you can give it over to your attorney.' I told her, 'It will cost you $10 to have that search made and draw up the papers.' That is what the lawyers charged. She said she would be perfectly willing to pay that."

He testified that Morrison & Schiff were their regular attorneys and acted for them in all these transactions, and that the appraiser is paid by Morrison & Schiff. He said that he carried a check for $65 to the office of Morrison & Schiff and handed it to Max Greenberger, a clerk in that office.

The defendant testified: That she asked for a loan of $50, and Mr. Blauner said:

"Charges on $50 would be $15, but being did not have to make a new search of the property wouldn't be anything, being all paid up, he said, wouldn't charge anything; wouldn't require any search because the furni-

ture was just the same that is the reason, going to send up the young man to see what I was telling was true."

That Mr. Blauner gave her a card and told her to present it at Morrison & Schiff's office, that they would give her the money. That when she went down to the office of Morrison & Schiff Mr. Blauner was not there. That she indorsed the check, and the young man handed her $50 in cash. That when she first went to ask for the $50 Blauner said "it wouldn't cost anything because he wouldn't have to make no search"; that she would just have to pay the interest.

Blauner was recalled and testified that he saw Mrs. Riordan indorse this check for $65.

"Q. That check was cashed right there at Morrison & Schiff's office? A. The young man asked her for the payment of their services, $10. She said she has not got any cash, and he offered to cash the check, and so she should pay him the $10. * * * Q. She got $55 and paid $10 for services rendered in this case? A. Which she agreed to pay. Q. That is the custom of your business, charge $10 for the services in examining the title to this furniture before you make the loan? A. Yes, sir; whatever the lawyers charge. * * * Q. The $10 went to the attorneys? A. Of course. Q. You received no part of it? A. We received not one dollar, not one cent; just said this is what the lawyer charges."

At the close of the case defendant's counsel moved for judgment dismissing the complaint on the merits "on the ground it appears that this is a loan transaction; that $50, or at the most, $55, was actually given to the borrower; that a note for $65, or mortgage for $65, was given; that at least $10, and possibly $15, was paid either as usury or as services for the attorney for the Realty Company. And on those grounds the note, the mortgage, and all the securities are void and forfeited, and the debt is discharged. On that ground I move that the complaint be dismissed on the merits."

The Banking Law, chapter 2 of the Consolidated Laws, chapter 10 of the Laws of 1909, amended by chapter 127 of the Laws of 1910, which took effect eight days before this transaction (section 314 was not amended) provides (article 10) for the incorporation of companies to loan moneys not exceeding $200 to any one person, upon pledge or mortgage of personal property. Section 312 thereof provides that:

"It shall be entitled to charge and receive upon each loan made by it without the actual delivery to it of the property mortgaged, interest at a rate not exceeding two per centum per month, which interest however shall not be charged or collected in advance. It may also charge for the first examination of the property mortgaged, and for drawing and filing the necessary papers, and for all other expenses, a sum not exceeding two dollars, if a loan of more than fifty dollars shall actually be made, and a sum not exceeding one dollar if a loan of fifty dollars, or less, shall actually be made; but no further charge for examination of the property, or for drawing or filing papers, or for services or expenses, or upon any pretext whatsoever, beyond the said charge for interest, except upon the foreclosure of the security or discount shall be made upon any removal or extension of the loan, or any transfer or change of the loan within one year from the date of the original loan, not oftener than once in each period of twelve months thereafter * * * nor shall any charge be made by any such corporation, its attorneys or agents in connection with the collection of debts due it, except upon the foreclosure of the security or upon the entry of judgment. No loan greater than two hundred dollars shall be made under the authority of this section. * * * No such corporation shall charge any borrower any

interest or commission in excess of the rate of six per cent. per annum, except as hereinbefore authorized."

Of course these provisions did not directly apply because it was not shown that the plaintiff was incorporated under said law, or that it received or asked 2 per cent. a month for this loan.

[1] But section 314 provides as follows:

"Prohibitions. * * * No person or corporation, other than corporations organized pursuant to this article, shall directly or indirectly, charge or receive any interest, discount or consideration greater than the legal rate of interest upon the loan, use or forbearance of money, goods or things in action less than two hundred dollars in amount or value, or upon the loan, use or sale of personal credit in anywise where there is taken for such loan, use or sale of personal credit any security upon any household furniture, apparatus or appliances, sewing machine, plate or silver ware in actual use, tools or implements of trade, wearing apparel or jewelry. The foregoing prohibition shall apply to any person who, as security for any such loan, use or forbearance of money * * * makes a pretended purchase of property from any person and permits the owner or pledgor to retain the possession thereof, or who, by any device or pretense of charging for his services or otherwise, seeks to obtain a larger compensation in any case hereinbefore provided for. Any person, and the several officers of any corporation, who shall violate the foregoing prohibition, shall be guilty of a misdemeanor, and upon proof of such fact the debt shall be discharged and the security shall be void."

Appellant claims that the device used is an obvious attempt to evade the provisions of the statute. The statute says "no person or corporation" "shall directly or indirectly charge or receive" "in any wise" or "by any device or pretense of charging for his services or otherwise." The respondent urges that the evidence is positive and without contradiction that Morrison & Schiff received the $10, and that the plaintiff received no part thereof. But, says the appellant, Morrison & Schiff were the regular attorneys of the plaintiff; this was part of their regular custom; they were acting solely for the interests of the plaintiff in examining the security and in drawing the papers for its benefit; that the result is that the defendant was compelled to pay the plaintiff's lawyers in order to secure the loan asked for, which causes her, upon security of household effects for a loan less than $200, to pay more than the legal rate of interest. It is clear the security came within the language of the statute. The mortgage and its schedule show the articles were household furniture, and the evidence shows they were at the home of the defendant.

I think it plain this was a trick, device, and pretense of "charging for services, or otherwise," to evade the statute, and that the payment to the lawyers was not an independent transaction and did infect the loan.

[2] It is claimed that the statute was not pleaded. The case was in the Municipal Court, where pleadings are oral and informal. The answer pleaded usury, and this statute confines the loaner to the legal rate of interest. The motion to dismiss, while not mentioning the statute, evidently calls attention to it in the language quoted, and in the body of the case plaintiff's witness was asked whether they were incorporated under the act, and had given the bond.

The evident purpose of this legislation was to protect the poor and needy who were compelled by their necessities to borrow small

amounts upon the specified kind of security from exorbitant demands. The statute, being remedial, should be liberally interpreted to accomplish the good intended. Here the defendant received at most $55, has paid to the lender $41.30 and to its attorneys $10, and the lender has a judgment in replevin for all the defendant's household goods upon security of which the loan was made. We think the transaction comes within the plain reading of the statute as well as its intent, and that the device or pretense of charging for services or otherwise cannot succeed.

The determination of the Appellate Term and the judgment of the Municipal Court are reversed, and judgment directed dismissing the complaint on the merits, with costs in all courts to appellant. All concur.