Solomon Pollack, Plaintiff, *v.* Madison Long Island Personal Loan Company, Inc., Defendant.

Municipal Court of New York, Borough of Bronx, Second District, January 16, 1941.

*Noah Rotwein*, for the plaintiff.

*David Groberg* [*Seymour Mork* of counsel], for the defendant.

McGrath, J. Plaintiff makes a motion for judgment on the pleadings under rule 112 of the Rules of Civil Practice. This application is addressed to the first cause of action, which is predicated upon an alleged conversion of plaintiff's automobile.

The facts are: The defendant Madison Long Island Personal Loan Company, Inc., is a licensed moneylender, organized under article IX of the Banking Law. Plaintiff applied for a loan of $300 from defendant. He received $283.33 and signed a note for $300, 1 earing interest at three per cent per month on the unpaid balance

not exceeding $150 and two and one-half per cent per month on the unpaid balance exceeding $150. The note, among other things, also provided that a chattel mortgage was given by plaintiff on his car and that the note was given subject to its terms. The note also provided for waiver of trial by jury. In addition to the interest hereinbefore referred to, the defendant required plaintiff to pay $16.67 for insurance on the automobile.

Upon default on the part of plaintiff, the Madison Long Island Personal Loan Company, Inc., seized plaintiff's automobile. The plaintiff claims that the note was void since it was usurious and given in violation of the Banking Law. If the note was, void as usurious and violative of the Banking Law, then the act of defendant in possessing the car was likewise void. Defendant states in its brief that there is not a single reported case in New York on this question.

Article IX of the Banking Law was enacted by the Legislature for the protection of a definite class of persons, namely, those who were in need of small loans and because of the limited nature of their security were unable to readily obtain funds. The Legislature in enacting article IX made legal a rate of interest far in excess of six per cent per annum. This was done in order to give to the lenders of money an adequate compensation for any risk that they might incur, but in extending these rates to the small loan companies the Legislature was careful in its wisdom to impose very definite duties and restrictions upon the lender. It did not intend that those already griped by economic necessity would be further pressed until they were hopelessly enmeshed in financial disaster. A great duty was placed upon the small loan companies to deal fairly with this class of borrowers, and likewise a great opportunity was given to these companies to make a large return on their investment and at the same time to render a public service.

Section 352 of the Banking Law reads: " Every licensee hereunder may loan any sum of money not exceeding three hundred dollars in amount and may charge, contract for, and receive thereon interest, consideration, or charges not exceeding three per centum per month on any part of the unpaid principal balance of the loan not in excess of one hundred and fifty dollars and two and one-half per centum per month on any remainder of the unpaid principal balance of the loan.

" No licensee shall induce or permit any borrower or borrowers to split up or divide any loan or loans, nor shall any licensee permit any borrower, nor any husband and wife individually or together, to be indebted to him under more than one contract of loan at the same time.

" No interest, consideration, or charge for the use of money shall be deducted or received in advance or compounded, and all interest, consideration and charges for the use of money shall be computed on unpaid principal balances.

" In addition to the maximum rate or amount of interest, consideration, or charges above specified, no further or other charge or amount whatsoever for any examination, service, brokerage, commission, expense, fee or bonus or other thing or otherwise shall be directly or indirectly charged, contracted for, or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for filing, recording, or releasing in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter. If any interest, consideration or charges in excess of those permitted by this act are charged, contracted for, or received the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever."

So careful was the Legislature in the framing of this section that it attempted to leave no loophole through which unscrupulous loan companies could extract a still greater rate of interest from the lender, and as a penalty for the violation of this section it provided that the licensee shall have no right to collect or receive any principal, interest or charges whatsoever.

The question arises, therefore, whether this charge of sixteen dollars and sixty-seven cents was in contravention of the section above quoted. The answer seems to be in the affirmative, because a reading of paragraph 3 of the mortgage, referred to as Exhibit B and which is a part of defendant's bill of particulars, provides that " the mortgagor shall and will keep said property insured against loss and damage by fire, theft, collision and conversion; loss, if any, payable to the mortgagee as his or their interest may appear, and will pay the cost of said insurance and in default thereof it shall be lawful for the mortgagee to effect such insurance and the premium paid for same shall be added to the amount due hereunder and shall be secured by the lien of this mortgage." Certainly this is an additional charge which is prohibited by section 352 of the Banking Law. But not content, the mortgage went even further and provided that " the proceeds of any insurance paid by reason of loss, return premium or otherwise shall be applied toward the payment of any sum due or *not due* under this agreement at the option of the mortgagee." (Italics not in original.) As was said by the United States Supreme Court in *DeWolf* v. *Johnson* (10 Wheat. 367, 385): " Usury is a moral taint wherever it exists, and no subterfuge shall be permitted to conceal it from the eye

of the law; this is the substance of all the cases, and they only vary as they follow the detours through which they have had to pursue the money lender."

Although the motion papers have not raised the question, it would appear that there is a violation of section 353 of the Banking Law, which prohibits a licensee from taking a confession of judgment or any power of attorney. Paragraph 3 of the chattel mortgage provides that " the mortgagor hereby appoints the mortgagee his true and lawful attorney to endorse his name to any check, draft or proof of loss that may be received from any insurance company for fire, theft, collision and conversion or otherwise and the interest of the mortgagee being coupled with that of the mortgagor, the power herein to endorse the name of the mortgagor to any check, draft or proof of loss is hereby made irrevocable."

Counsel for defendant in its brief makes claim that since the statute is penal in nature it must be strictly construed so as to give legality to the acts of the lender, unless the act clearly indicates a contrary intention. The statute must be read with a deep concern for the class of people which it was enacted for, namely, those seeking loans, and even construing it strictly it is impossible to give legality to the illegal acts on the part of this loan company. (*London Realty Co.* v. *Riordan*, 148 App. Div. 854; affd., 207 N. Y. 264.)

The defendant's brief also points out that to hold against the defendant would be to destroy the validity of thousands of loans made by this licensed dealer. While that may be unfortunate to the loan company, yet if thousands of persons have been imposed upon by the conduct of the Madison Long Island Personal Loan Company, Inc., in attempting to evade the restrictions set up by article IX of the Banking Law, that is no reason why a court should attempt to garb their illegal act with the cloak of legality. It would be a sad commentary indeed upon our courts if the borrowers of small amounts were to come seeking their legal rights only to have them denied because of judicial hesitancy to cause grave financial loss. Loan companies are advised by able and astute counsel, while the borrower enters into the contract invariably without the aid of any adviser.

The defendant moves pursuant to a notice of intention to amend its answer by adding a second affirmative defense, claiming a lien in the sum of $217.98 on plaintiff's automobile, to which it was subrogated by reason of having satisfied a conditional bill of sale on said automobile out of the proceeds of the loan. The answer for the purposes of this motion is deemed amended. The doctrine of subrogation is not applicable in this defense, since this transaction was merged in the note.

The motion for judgment on the pleadings is hereby granted to the extent of setting this case down for Trial Term, Part 1, on January 27, 1941, for an assessment of damages as to the value of the automobile on the day that it was converted by the defendant.

The action is severed as to the second cause of action.