OPINION OF THE COURT
Herbert Kramer, J.
*798 Does the imposition of an interest rate of 25% on a small loan invariably and necessarily violate the State’s usury provisions?
In November of 2004, defendant borrower contracted with the plaintiff for a revolving line of credit with a maximum credit limit of $5,000 and an agreed upon annual interest rate of 25%. After making some 27 payments on a monthly or bimonthly basis from the inception of the loan until August of 2007, the defendant still owed the plaintiff the selfsame $5,000 that he had initially borrowed. Since then, the plaintiff has recorded no further payment activity.
Plaintiff moves for summary judgment on its complaint seeking a balance of $6,128.50 in combined principal and interest together with the interest accruing since June of 2008, at the per diem rate of $3.45 together with the costs and disbursements of this action.
In opposition, the defendant argues that the rate of interest charged is usurious and that the defendant should be required to pay only the balance of the amount owed less the payments already made.
On the face of it, the amount of interest charged on this small loan is exorbitant and does appear to be usurious. Accordingly, this court asked the parties to brief this question.
Plaintiff responded saying that it is a foreign corporation licensed to do business under article IX of the Banking Law (§ 340 et seq. [the Licensed Lender Law]). As such, it is authorized to charge whatever rate of interest it has contracted for with the borrower, which rate of interest is not limited or defined by the usury provisions. To support this proposition, plaintiff refers us to a 1999 Bankruptcy Court case, In re Watkins (240 BR 668, 672 [ED NY 1999]).
The Watkins court, interpreting New York law, explained:
“As a licensed lender, the Defendant is authorized to make loans of up to $25,000 at interest rates as agreed to by the borrower and the lender. By virtue of Section 340 of the Licensed Lender Law, the Defendant is not subject to the statutory limits on the rates of interest that may be charged pursuant to Section 5-501 of the New York General Obligations Law (‘General Obligations Law’) and Section 190.40 of the New York Penal Law. Section 351 of the Licensed Lender Law specifically provides that only interest on amounts loaned in excess of $25,000 is subject to the maximum rates permitted by General
*799 Obligations Law § 5-501. However, the Licensed Lender Law does subject licensed lenders to stringent restrictions, such as limiting the type of security they can take and prohibiting them from charging examination fees, service fees, brokerage commissions or any other expenses, fees or bonuses not specifically authorized by the statute.” (Id.)
According to the Watkins court,
“[t]he purpose of allowing licensed lenders ... to charge borrowers any rate agreed upon for loans under $25,000 is to make credit available to high risk borrowers who would otherwise have no access to legal credit services. For this reason the New York legislature has, for 100 years, allowed licensed lenders to make small personal loans at interest rates far in excess of those set forth in the civil and criminal usury statutes.” (Id.)
Interestingly, the Watkins court did not cite any state cases for these propositions. And while its holding is consistent with the language of the relevant provisions,[1] it appeared to be somewhat inconsistent with the presumed purpose of article IX, which is to “ ‘protect from exorbitant and unconscionable demands the poor and needy who are compelled to borrow small sums to meet a pressing necessity.’ ” (Bond v Dentzer, 494 F2d 302, 309 n 4 [2d Cir 1974].) Indeed, the virtually limitless opportunity conferred upon licensed lenders to extract exorbitant rates of interest hardly seems consistent with this goal.
Yet, it has been uniformly held that the inducement of higher interest rates is the only way to ensure that properly supervised, legitimate lenders will be willing to advance small loans to those who may pose repayment risks to the lender.
“The drive to remedy [the preemption of this field by unscrupulous loan sharks] proceeded on the assumption that honest capital could engage in the small loan business only if guaranteed a fair return . . . Accordingly, considerable effort was expended ... to induce legislatures to legalize *800 small loan businesses under strict supervision.” (Madison Personal Loan v Parker, 124 F2d 143, 146 [2d Cir 1941].)
Indeed, in enacting article IX of the Banking Law, the Legislature imposed
“very definite duties and restrictions upon the lender[, not intending] that those already griped by economic necessity ... be further pressed until they were hopelessly enmeshed in financial disaster. A great duty was placed upon the small loan companies to deal fairly with this class of borrowers, and likewise a great opportunity was given to these companies to make a large return on their investment and at the same time to render a public service.” (Pollack v Madison Long Is. Personal Loan Co., Inc., 176 Misc 78, 79 [NY City Mun Ct 1941].)[2]
And this is precisely the situation at bar. Accordingly, the plaintiffs motion is granted to the extent that judgment shall *801 issue on the balance due on the loan together with the principal and interest of that has accrued since June of 2008. In the event that judgment is not entered within 30 days of the date of this decision, then interest thereafter shall accrue at the judgment interest rate. Costs and disbursements are denied.

. Banking Law § 351 (1) provides that
“[elvery licensee hereunder may loan any sum of money not exceeding the maximum principal amounts prescribed in section three hundred forty of this article [which is $25,000 for a personal loan and $50,000 for business and commercial loans], and may charge, contract for, and receive thereon interest at the rate or rates agreed to by the licensee and the borrower.”

. Thus, section 352 of the Banking Law provides that “[e]very licensee shall:
“Deliver to the borrower at the time any loan is made or prior to the first advance under an open-end loan agreement a statement, in the English language showing in clear and distinct terms the name and address of the borrower and of the licensee and all items required to be disclosed by the act of congress entitled ‘Truth in Lending Act’ and the regulations thereunder, as such act and regulations may from time to time be amended.
“For each cash payment made on account of any closed-end loan, give to the person making it at the time the payment is made, a plain and complete receipt containing the information required by regulations of the superintendent.
“Permit payment to be made in advance in any amount on any loan agreement at any time, but the licensee may initially apply such payment to all interest and other charges due to the date of such payment.
“Upon repayment of the loan in full, mark indelibly every obligation signed by the borrower or a copy thereof with the word ‘paid’ or ‘cancelled’, and release any mortgage or security agreement no longer securing an obligation of the borrower, restore any pledge, cancel and return any note or a copy thereof, and cancel and return any assignment or a copy thereof given to the licensee by the borrower. An open-end loan shall not be deemed to be repaid in full for this purpose unless any balance is paid in full and the borrower relinquishes all power to receive further advances under the contract and makes a written request for the release of all collateral for the loan. Every licensee which holds collateral of a borrower shall be fully liable for the return of the collateral upon payment of the indebtedness in full.
*801 “No licensee shall take any confession of judgment or any power of attorney running to himself or to any third person to confess judgment or to appear for the borrower in a judicial proceeding. “No licensee shall take any instrument in which blanks are left to be filled in after execution.”