### Senin, Admr., *v.* Metropolitan Life Insurance Company, Appellant.

Argued September 28, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Owen B. Rhoads,* with him *Barnes, Dechert, Price & Smith* and *Harry Coles Bates,* for appellant.

*Abraham Wernick,* for appellee.

OPINION BY KENWORTHEY, J., December 10, 1943:

The question is whether appellant had the right to compound interest on the policy loans. If it did not, the cash value would have carried the policies beyond the insured's death on April 3, 1940 and they were prematurely cancelled.

It has been settled that, in the absence of a provision authorizing it in the policy and the loan agreement, an insurance company has no right to compound interest on policy loans. *Murray v. Prudential Ins. Co.,* 144 Pa. Superior Ct. 178, 18 A. (2d) 820. The lower court held first that, whether or not the policy and agreement provided for it, it was prohibited by Section 26 of the Act of 1911,[1] and secondly that the policy did not authorize compound interest with sufficient clarity. We think the court was wrong on both counts.

*The Legislation*

Section 26 of the Act (in effect when the policies were written) provided: "No policy of life insurance shall contain any of the following provisions: A—Any provision for forfeiture of the policy for failure to repay any loan on the policy or to pay interest on any such loan, while the total indebtedness on the policy is less than the cash value thereof. In ascertaining the indebtedness due upon the policy loan, the interest, if not paid when due, shall be added to the principal of such loan, and shall bear interest at the rate specified in the note or loan agreement."

The court below took the position that everything

---

[1] Act of June 1, 1911, P. L. 581, re-enacted in the Insurance Code of 1921, Act of May 17, P. L. 682, art. IV, §411, as amended by the act of 1937, June 4, P. L. 1634, 2, 40 PS §511.

mentioned in Paragraph A of Section 26 of the Act of 1911 was prohibited; that it prohibited both a provision for forfeiture and a provision for compounding interest. But grammatically, the second sentence does not add another prohibition; it qualifies the first by pointing out the manner in which the indebtedness is to be determined. In our opinion, it was intended as a limitation; it plainly provides that, in determining the amount of the indebtedness, interest shall be compounded.

In the case of an ordinary bank loan, as soon as there is a default in the payment of interest due, the bank is in a position immediately to declare the entire debt due and payable and take steps to cancel the loan and collect the debt. The first sentence of Paragraph A stays the hand of an insurance company from taking similar measures where a loan is made on the policy. It, in effect, compels the insurer to make to the insured additional loans corresponding to the amounts of interest as and when they become due and to continue the granting of these additional loans until the total debt reaches the cash value of the policy. If, when an interest payment becomes due, the insurer were neither in a position to take measures to collect it nor to charge interest on it, the effect would be to compel the insurer, by legislative mandate, to grant to the insured additional loans without interest.

Legislation affecting insurance companies and the policies they issue is not all designed for the protection or benefit of the individual policyholder. Much of it is designed to maintain the financial security of insurance companies as a protection to all policyholders as a class. We think the second sentence of Paragraph A belongs in the latter classification. Perhaps a simple illustration would be helpful. Suppose an insured borrows $1,000 on a $10,000 policy and suppose he lives and continues to pay the premiums on the policy for twenty years thereafter. Assuming, because it would ordi-

narily be the case, that the payment of premiums each year would sufficiently increase the cash value to prevent the insurer from cancelling the policy or taking steps to enforce the collection of the loan or interest, the total amount added to the loan at the time of death under the appellee's contention would amount to $1,200 (20 x $60 per year). And, again assuming appellee's contention were correct, the company would have been compelled, in effect to advance that sum to the insured over a long period of years without the right to get any return on the amounts thus advanced. Such interpretation would enable a policyholder to default in the payment of interest on his loan, have the use of his money throughout the life of the policy and end up by paying exactly the same amount and no more than the policyholder who had diligently paid interest when due. The unreasonableness of such interpretation is clear.

*The provisions of the Policies and Loan Agreements*

The loan provisions of the two policies involved were identical except that in Policy No. 963449-A the rate of interest was 5%, while in Policy No. 1551758-A the rate was 6%. The provisions quoted from the former are as follows: "Loans—At any time after three full years' premiums have been paid and while this Policy is in force, the Company will loan on the sole security thereof up to the limit secured by the cash surrender value, upon the execution of a proper loan agreement and on proper and lawful assignment and delivery of this Policy. The loan will bear interest at the rate of five per centum per annum and may be repaid at any time while the Policy is in force. If interest be not paid when due, it shall be added to the principal, provided the entire outstanding indebtedness shall be within the limit secured by the cash surrender value; otherwise, non-payment of interest shall render the Policy null and void after one month's notice shall have been mailed by the Company to the last known address of

the Insured and of the assignee of record if any. After the expiration of the premium payment period interest in advance to the end of the policy year will be required. ......"

The loan agreements provided: "Said loan shall bear interest from the date the loan is granted at the rate provided in said policy, payable annually on the anniversary date of the policy and, unless duly paid, said interest shall be added to the principal of the loan and bear interest at the same rate and on the same conditions."

We think the right to compound interest is clearly set forth in the policy. The minor difference in language between the policies and the loan agreements—the policies provide, "If interest be not paid when due, it shall be added to the principal, ......," whereas the loan agreements add the words "and bear interest at the same rate and on the same condition,"—is insignificant. The very function of adding interest to principal is to compound the interest by treating the whole as a new principal for the calculation of the interest for the next period. See *Hovey v. Edminson*, 3 Dak. 449, 22 N. W. 594, 599; *Vaughn v. Graham*, 234 Mo. App. 781, 121 S. W. (2d) 222, 226, 227. The loan agreements merely spell out what is necessarily implied in the language of the policies. There is no ambiguity which would require us to resort to the rule that the provisions of a policy must be construed against the insurer.

*Method of Cancellation of Policy No. 1551758-A*

The conclusion we reach requires a reversal of so much of the judgment entered on Policy No. 963449-A. But an additional question is presented with regard to Policy No. 1551758-A. The anniversary date of the latter was August 7th. The loan agreement provides that the interest shall be "payable annually on the anniversary date of the policy." Although the policy became paid-up in 1934 and provided that, "After the ex-

piration of the premium payment period interest in advance to the end of the policy year will be required," appellant never required interest in advance. On August 7, 1938, according to appellant's own figures, after deducting the interest due for the previous year, the policy had a cash value of $17.28. On that date appellant sent to insured the usual notice for interest due for the previous year. Then, on June 7, 1939,—two months before the anniversary date—it notified the insured that unless an additional payment of $8.25, to carry the policy to the end of the year, was made within thirty-one days the policy would be cancelled. This, we think, it had no right to do.

Under the terms of the loan agreement interest was payable only on an anniversary date of the policy whether or not declared payable in advance. Assuming, without deciding,[2] that appellant had a right, on August 7, 1938, to declare interest to the end of the year payable in advance and to notify the insured the policy would be cancelled in thirty-one days if the deficit were not paid, its election not to do so deprived it of the right to demand or collect interest until the next anniversary date, August 7, 1939. And having demanded it prematurely on June 7, 1939, the demand and cancellation was a nullity and since no further notice was sent the policy was never cancelled. Roeser v. National Ins. Co., 115 Pa. Superior Ct. 409, 175 A. 887.

The record is remitted to the court below with direction to reduce the judgment to the amount due on Policy No. 1551758-A with interest.

---

[2] The right may have been waived. See Poles v. State Mut. Benefit Soc., 129 Pa. Superior Ct. 297, 301, 302, 195 A. 429.