GERTRUDE M. JONES, Plaintiff, *v.* MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Defendant.

Supreme Court, Special Term, Monroe County, December 18, 1953.

*William H. Morris* for defendant.

*W. Martin Jones, Jr.,* and *William L. Clay* for plaintiff.

BLAUVELT, J. This is an action brought by Gertrude M. Jones against Massachusetts Mutual Life Insurance Company to recover a refund of money paid by the plaintiff to the defendant from 1924, to 1950, as premiums on a life insurance policy, together with interest and penalties to which plaintiff alleges she is entitled.

Defendant has made a motion for summary judgment dismissing the complaint. Plaintiff has made a cross motion for permission to amend her complaint by increasing the amount of damages demanded and further asking for judgment on the pleadings in her favor.

The parties agree that there are no triable issues of fact and by the defendant's motion and the plaintiff's cross motion request that this court at Special Term determine the issues of law and direct judgment accordingly.

On June 19, 1924, the defendant company issued an ordinary life insurance policy insuring the life of plaintiff in the sum of $3,000, the quarterly premiums thereon to be paid by the insured in the amount of $36.69 each. These quarterly premiums were paid by the plaintiff from the date of issue of the policy in June, 1924, through March, 1941, sometimes by cash alone, in other instances by cash and the application of annual policy dividends, in some other instances solely by premium loans against the policy, and in still some other instances by a combination of funds derived from two or more of those sources. There were twenty-seven separate premium loans made against the policy during the period from December, 1931, through June, 1940, each upon a separate written request of the plaintiff. Unpaid interest at the rate of 6% per annum on these several premium loans was added to the principal of the premium loan account annually on June 19th (the anniversary date of the policy). On June 19, 1941, the balance of the indebtedness against the policy reserve on the premium loan account, including principal and interest compounded annually, amounted to $272.69, exclusive of the amount of the quarterly premium due on that date, and after crediting on the premium loan account the $18.84, 1941 annual policy dividend.

In April, 1931, plaintiff obtained a policy loan from the defendant company in the amount of $500, which loan was to bear interest at the rate of 6% per annum, payable semiannually on October 1st and April 1st, of each year. Up until August, 1937, no part of the principal or interest on this loan had been paid to the company, and on October 1st and April 1st of each year from 1931, to 1937, the interest which was then due had been added

to the principal of the policy loan account. In August, 1937, the balance of the indebtedness against the policy reserve on the policy loan account amounted to $726.22, inclusive of principal and interest compounded semiannually. In August, 1937, plaintiff executed a new policy loan certificate, pursuant to the terms of which she was loaned the sum of $808.63, which loan was to bear interest on the same terms as her original $500 policy loan. From the proceeds of this new 1937 loan, defendant deducted the $726.22 balance of principal and interest due on the original 1931 policy loan, which indebtedness was then cancelled, applied $30.22 thereof in part payment of the unpaid June, 1937, quarterly premium and premium loan interest and paid the $52.19 balance of the new loan proceeds to plaintiff by draft. Up until July, of 1941, no part of the principal or interest on this new 1937 policy loan had been paid to the company, and on each October 1st and April 1st between October, 1937, and April, 1941, the interest which was then due on these dates had been added to the principal of the policy loan account. On April 1, 1941, the balance of the indebtedness against the policy reserve on the policy loan account amounted to $1,001.81, including principal and interest compounded semiannually.

In July, 1941, plaintiff surrendered to the defendant $2,000 of the sum insured under the $3,000 policy originally issued in 1924, for a stated consideration of the cash surrender value thereof amounting to $875.34, and on July 24, 1941, the defendant issued to the plaintiff a new ordinary life insurance policy insuring the life of plaintiff in the sum of $1,000, effective as of June 19, 1941, the quarterly premiums thereon to be paid by the insured in the amount of $12.23 each. The entire proceeds of this $875.34, the cash surrender value of the $2,000 of the insured sum which was surrendered by the plaintiff, was used by the company to apply on the premium and policy loans outstanding against the policy and to pay the quarterly premium of $12.23 due on June 19, 1941, on the new $1,000 policy. Application of the surrender value was made in the following manner:

| | | |
|---|---:|---:|
| Total surrender value.................... | | $875.34 |
| Paid June, 1941 quarterly premium...... | $12.23 | |
| Paid interest from June, 1940 to June, 1941 on premium loan account............ | 16.33 | |
| Paid balance in reduction of policy loan account ........................... | 846.78 | |
| | $875.34 | $875.34 |

This application of the proceeds in 1941, reduced the premium loan account to a balance of $256.36 and left a balance of $155.03 unpaid on the policy loan account, a total indebtedness of $411.39 against the reserve on the new $1,000 policy.

No payments of principal or interest were made by plaintiff on the $256.36 balance of the premium loan account after the surrender settlement in 1941, with the exception of $5.05 credited as a cash payment on interest in June, 1948. Commencing in June, 1942, and annually thereafter, the company computed interest at 6% on the unpaid balance of the premium loan account and added such interest to the principal balance. This compounding of interest annually at the rate of 6% per annum increased the premium loan account to an unpaid balance of principal and interest amounting to $337.68, at the time of the lapse of the policy in June, 1950, upon nonpayment of the quarterly premium then due.

No payments of principal or interest were made by plaintiff on the $155.03 balance of the policy loan account after the surrender settlement in 1941. Commencing in October, 1941, and semiannually thereafter, the company computed interest at 6% on the unpaid balance of the policy loan account and added such interest on the new principal which included past-due interest, semiannually at the rate of 6% per annum increased the policy loan account to an unpaid balance of principal and interest amounting to $295.29, at the time of the lapse of the policy in June, 1950, upon nonpayment of the quarterly premium then due.

In June, 1950, the $1,000 policy had a gross cash value of $638.27; the total indebtedness against the policy, made up of the balance of the premium loan and the balance of the policy loan was $632.97, including accrued interest; this reduced the tabular cash net surrender value to $5.30, an amount less than the quarterly premium then due and unpaid. Thereupon, in accordance with the provisions of the policy, the entire indebtedness was deducted from the gross cash value of the policy and the policy changed to extended term insurance. The extended term insurance expired on August 6, 1950.

No question is raised as to the accuracy of the computations made by the defendant company. As the plaintiff so aptly stated in her reply brief, "There is no real issue of fact to be determined by the Court. All of the issues herein are of law. * * * The issues in this case boil down to the question of whether the defendant was entitled to charge interest on the policy loan at six (6) percent compounded either annually or semi-annually, and also whether defendant was entitled to charge

interest of six (6) percent compounded annually or semi-annually on premium loans." It appears without question from the exhibits filed on these motions that the defendant company compounded interest annually at the rate of 6% per annum on the premium loans and compounded interest semiannually at the rate of 6% per annum on the policy loans.

The plaintiff contends that this compounding of interest was unlawful and usurious and in violation of the provisions of section 370 *et seq.* of article 25 of the General Business Law, which limits the maximum rate of interest to 6% per annum, simple interest. She claims that by charging usurious rates of interest, defendant has rendered the entire transaction illegal, fraudulent and void. Plaintiff seeks to recover a judgment against the defendant for all premium payments made by her, together with interest and penalties thereon.

The defendant contends that its practice of periodically adding interest when due to principal, annually on the premium loans and semiannually on the policy loans and thereafter computing interest on the new principal which included past-due interest, was provided for by the terms of the policy and the loan agreements and that such procedure is specifically authorized by paragraph (g) of subdivision 1 of section 155 of the Insurance Law, formerly subdivision 7 of section 101. Defendant seeks summary judgment dismissing plaintiff's complaint.

The question for decision is whether or not, under the conceded facts of this case, the defendant insurance company was permitted to charge compound interest on premium and policy loans made to the plaintiff.

The policy provisions relating to premium and policy loans is as follows:

### " Loans

" On a proper assignment of this policy to the Company, the Company will loan on the sole security thereof, with interest at the rate of six per cent, per annum, payable semiannually, the whole or any part of the cash value of the policy and of all paid-up additions thereto, at the end of the policy year during which application for the loan is made, provided that from such loan the Company will deduct any existing indebtedness hereunder and interest to the end of the current policy year on the total loan, and any unpaid portion of the premium for the current policy year, but the Company may, at its option, defer the granting of a loan, other than to pay premiums on policies in the Company, for a period not exceeding ninety days from the date

of the application therefor. If this policy is not assigned, the Company will loan on the signature of the insured alone provided the policy is not payable to a named beneficiary; or if payable to a named beneficiary, provided the loan is made for the sole purpose of paying the premiums, or interest on any indebtedness to the Company hereunder, or both, or provided the unlimited right to change the beneficiary has been reserved in the application for, or amendments to, this policy. The whole or any part of a loan may be repaid at any time.

" If any premium is not paid at the expiration of the grace period, the Company will, if a written request therefor has been made by the insured and any assignee, automatically loan the amount of such premium less any dividend payable and charge the same as an indebtedness against the policy, bearing interest at the rate of six per cent, per annum, if the tabular cash surrender value of the policy after the payment of such premium will be equal to the total indebtedness hereunder with interest thereon to the thirty-first day after the due date of the next premium payable hereunder, or to the next anniversary of the policy if no further premium will be payable; or if said cash value shall be less than said total indebtedness and interest the Company will loan to the insured the largest installment of premium shown by the policy for which the cash value of the policy (after the payment of such installment) less indebtedness and interest may be sufficient, and thereafter the premium on this policy shall be payable in like installments, unless a request for change in due form shall be made; but in no case will the Company loan to the insured an amount less than a quarterly installment of premium unless the balance of premium shall have been paid: provided, however, that any dividend accumulations hereunder shall first be utilized for the payment of such premium, and that while any such premium loan is outstanding dividends apportioned to the policy shall be applied to the reduction of said loan. The whole or any part of such loan may be repaid at any time. The insured with the consent of the beneficiary and of any assignee may revoke this provision by a writing filed with the Company.

" Failure to repay a policy loan or premium loan, or to pay interest thereon, shall not avoid the policy unless the total indebtedness thereon including accrued interest shall equal or exceed the loan value at the time of such failure, nor until thirty-one days after notice has been mailed by the Company to the last known address of the insured and of any assignee of record at the Home Office of the Company ".

Each of the twenty-seven separate premium loan certificates, executed by the insured upon making the premium loans with the company, provides in part as follows: "It is hereby agreed that if approved, said loan and any additional loans hereafter made shall bear interest at the rate of six per cent. per annum from the date on which the grace expires on any premium for which a loan is made. This interest shall be payable annually on June 19th. Overdue interest shall be added to the existing indebtedness and bear interest on the same terms."

Each of the two separate policy loan certificates, executed by the insured upon making the policy loans with the company, provides in part as follows: "SECOND. That said loan shall bear interest at the rate of six per cent. per annum payable semi-annually on the first day of April and October in each year, both principal and interest payable to said Company at its home office at Springfield, Massachusetts; it being further agreed that in case said interest shall not be paid when due, it shall be added to and become a part of the principal of said loan and shall thereafter be subject to the same rate of interest."

In determining the rights of the parties, it is necessary to construe together the provisions of the policy and the premium and policy loan certificates. They together make up the complete loan contracts. (*State of Missouri ex rel. Northwestern Mut. Life Ins. Co.* v. *Bland,* 354 Mo. 391; 29 Am. Jur., Insurance, §§ 464, 464.1.) A reading of these provisions of the policy and loan certificates makes it clear beyond any doubt that each premium and policy loan was conditioned upon the specific agreement of plaintiff that overdue interest should be added to the existing principal indebtedness and thereafter bear interest at 6%; furthermore, that the interest should be computed annually on the premium loans and semiannually on the policy loans. It is equally clear that the parties agreed to the compounding of interest on the loans, as the very function of adding interest to principal is to compound the interest by treating the whole as a new principal for the calculation of the interest for the next period. (*Senin* v. *Metropolitan Life Ins. Co.,* 153 Pa. Superior Ct. 658.) It necessarily follows that the company in this case was authorized by the policy and loan agreements to charge compound interest on the premium and policy loans, unless prohibited by statute.

As previously stated, plaintiff contends that the compounding of the interest by the defendant is in violation of sections 370 and 371 of the General Business Law, which state in effect that the maximum rate of interest upon a loan shall not exceed

6% per annum and that interest in excess thereof is usury. Plaintiff urges that these statutes limit the right of the defendant to charge only simple interest at a rate not in excess of 6% per annum. However, there is an exception contained in the statute which plaintiff has overlooked or ignored. General Business Law (§ 370), reads as follows: " § 370. Rate of interest. The rate of interest upon the loan or forbearance of any money, goods, or things, in action, *except as otherwise provided by law,* shall be six dollars upon one hundred dollars, for one year, and at that rate, for a greater or less sum, or for a longer or shorter time." (Emphasis supplied.) An examination of the Insurance Law discloses that it is " otherwise provided by law " that on loans made against insurance policy reserves, the insurer may collect interest in excess of 6% per annum. Paragraph (g) of subdivision 1 of section 155 of the Insurance Law states in part as follows: " *§ 155. Life insurance policies; standard provisions* * * * The policy may further provide that if the interest on the loan is not paid when due, it shall be added to the existing loan, and shall bear interest at the same rate".

This statutory provision authorizing the insurer to add unpaid interest to principal and thereafter charge interest on unpaid interest was first enacted as a part of chapter 275 of the Laws of 1922, became effective March 27, 1922, and has been the law of this State ever since that date. This clause was originally in subdivision 7 of section 101 of the Insurance Law, until that law was rewritten and revised by chapter 882 of the Laws of 1939, effective January 1, 1940. Since that date the same provision has been set forth in the above-quoted part of paragraph (g) of subdivision 1 of section 155 of the Insurance Law. It is to be noted that this statutory authority to charge interest upon interest has been the law of this State continuously since prior to June 19, 1924, the date of issue of the original policy under consideration.

Specific authority being given by the Insurance Law to charge interest upon interest, or in effect to permit compounding of interest, if in conflict with the General Business Law (§§ 370, 371), which prohibit interest in excess of 6% per annum, overrides or modifies those sections of the General Business Law to the extent necessary to give effect to the provisions of the Insurance Law. (*Guerin* v. *New York Life Ins. Co.,* 271 App. Div. 110.)

Our Legislature has provided in some fields other than the insurance business for the legal exactment of interest on loans

in excess of 6% per annum. Permitting a bank or trust company to discount commercial paper by taking interest in advance of maturity of the debt results in the borrower paying more than a 6% rate of interest. (Banking Law, § 108.) Licensed lenders may on a loan of $500 or less, charge interest at 2½% per month on the first $100 thereof and 2% per month on the next $200 thereof. (Banking Law, § 352.) Loans made under the statutory authority contained in these above two examples would not be usurious although interest is charged in excess of 6% per annum. They are mentioned only to point out other instances where the Legislature has seen fit to relax the provisions relating to interest and usury as contained in the General Business Law.

It does not appear that the practice of charging interest on past-due unpaid interest on loans made on a life insurance policy as authorized by statute is unconscionable, oppressive or in any way contrary to public policy. A distinction must be made between a loan on an insurance policy and an ordinary commercial loan. An insured has a contract and statutory right to make a loan on a life insurance policy within the reserve limits. Purely commercial loans may be granted or refused at the will of the lender. Policy loans, and interest thereon, may be paid by the insured to the insurer, only if the insured so elects, as the company may not demand and enforce payment thereof, except that the total indebtedness is a claim against the policy proceeds. Usual remedies to enforce payment of interest due cannot be resorted to by the company. Commercial loans have maturity dates and lenders may enforce the payment of the principal and interest when due. There is no personal liability on the part of a policy borrower to pay interest or repay principal on a policy loan, such as exists under the ordinary debtor-creditor relationship in the ordinary commercial loan transaction. As pointed out in *Senin* v. *Metropolitan Life Ins. Co.* (*supra*, p. 661): '' Legislation affecting insurance companies and the policies they issue is not all designed for the protection or benefit of the individual policyholder. Much of it is designed to maintain the financial security of insurance companies as a protection to all policyholders as a class.'' Furthermore, in view of the periodic policy loan statements rendered by the company to the insured, it seems incredible as a matter of law that plaintiff was ignorant of the fact that compound interest was being charged on the loan accounts. If she knew of the charging of compound interest and failed to protest, she can not now object thereto. (*Baker* v. *Equitable*

*Life Assur. Soc.,* 288 N. Y. 87.) '' the right to retain compound interest when voluntarily paid is unassailable.'' (*Young* v. *Hill,* 67 N. Y. 162; *Mills* v. *Equitable Life Assur. Soc.,* 262 App. Div. 907.)

The procedure followed by the defendant in compounding interest on the premium and policy loans made to the plaintiff was agreed to between the parties under the terms of the insurance policy and loan certificates, and was expressly authorized by the provisions of the Insurance Law. Having reached this conclusion, it becomes unnecessary to determine whether or not the Statute of Limitations has run against plaintiff's alleged cause of action.

Cross motion of plaintiff must be denied.

Motion of defendant for summary judgment dismissing the complaint must be granted, as it appears that plaintiff's action has no merit.

Submit order.